## 5076. HAYES *v.* THE STATE.

A tenant who in good faith claims possession of land, under one who bona fide claims title and right of possession thereof, can not be convicted of the offense of trespass. To authorize a conviction it is essential that it be shown that the alleged trespass was committed wilfully and intentionally; and, for this reason, proof that the act alleged to be criminal was done in good faith is a perfect defense, and any evidence showing that the possession of the accused either originated or was continued in good faith is relevant and competent.

DECIDED OCTOBER 28, 1913.

Accusation of misdemeanor; from city court of Fitzgerald— Judge Griffin. February 28, 1913.

*H. J. Quincey, O. H. Elkins, Alexander Koplin,* for plaintiff in error.

*W. H. Horne, solicitor, McDonald & Grantham, L. Kennedy,* contra.

RUSSELL, J. The defendant in the lower court was convicted of the offense of trespass, and he excepts to the judgment refusing a new trial. The accusation charged the particular offense defined in section 216, paragraph 4, of the Penal Code, it being alleged that the accused did unlawfully squat and settle upon described land of

M. Dixon with no bona fide claim or color of title to said land and
without the consent of the owner, the said Dixon. It appears from
the record that in 1912 Ike Hayes, a brother of the defendant, was
in possession of this tract of land as a tenant of M. Dixon, and was
about to be evicted. He moved out in the afternoon and the de-
fendant moved into the house in the early part of the night. From
the relationship of the parties and the circumstances under which
the defendant moved upon the premises it is insisted that there
was a conspiracy between these two brothers, and there are other
facts disclosed by the record which might have authorized a con-
viction of the accused if the jury had found him guilty after having
had submitted to them all of the evidence which was tendered
bearing upon the question of his good faith. In our opinion, how-
ever, the trial judge erred in repelling certain evidence which cer-
tainly tended to illustrate the bona fides of the defendant's entry
and possession of the premises claimed by the prosecutor; and since
it can not be known what would have been the effect of this evi-
dence upon the mind of the jury, the fact that it was withheld from
them must be adjudged to have been prejudicial to the accused,
and the error must be held to require the grant of a new trial.

It is perfectly plain from the record that the title to the prem-
ises upon which the accused was alleged to have squatted and tres-
passed is in dispute. The defendant introduced testimony showing
that he is the tenant of one David Walsh, as guardian of the chil-
dren of his deceased brother, William Walsh, and the prosecutor
introduced a deed from L. Kennedy, as administrator of William
Walsh, placing the title in himself. The testimony that the accused
entered the premises as a tenant of David Walsh is unimpeached
and uncontradicted by any other evidence in the record. The ac-
cused offered in evidence his sworn answer to an equitable petition
brought by Dixon to recover possession of the dwelling-house and
premises of which the accused was in possession, and to enjoin him
from going upon the land, attempting to cultivate it, or in any
way interfering with the possession of the tenants of Dixon; and
this answer the court rejected. In it the defendant denied all the
material allegations of the plaintiff's equitable petition, set up as
a defense Walsh's title and his tenancy by contract under Walsh,
and offered to give any bond required of him by the court to answer
for damages which the plaintiff might recover against him. This

answer was sworn to on January 25, 1913, prior to the filing of the accusation, which was not preferred until February 26 thereafter. In support of this answer the defendant tendered also the pleadings and the verdict thereon in the case in which the letters testamentary of L. Kennedy, as administrator of David Walsh, deceased, were annulled; and this testimony also was rejected by the court. The ground upon which the trial judge excluded the answer of the defendant in the action brought by Dixon perhaps was that it was in the nature of a self-serving declaration, because the answer was made after Hayes went into possession, and it might be imagined that he feared he would be prosecuted by Dixon. Regardless of this, however, we think the court erred in excluding the documentary evidence, because the very nature of the offense of trespass, and the absolute necessity that it be shown that the act alleged to be trespass was done wilfully, makes relevant any act or saying of the accused from which good faith may be imputed. Nothing is better settled than that the issue of title to land can not be determined by a prosecution for trespass. In *Wiggins* v. *State,* 119 *Ga.* 217 (46 S. E. 86), Justice Lamar, speaking for the Supreme Court, holds that a prosecution for trespass is not intended as a substitute for the remedy provided by an action for forcible entry and detainer, nor to serve the office of determining title. And in *Hateley* v. *State,* 118 *Ga.* 79 (44 S. E. 852), it was ruled that the code section now under consideration "was not designed to try disputed land titles, but to punish those who *wilfully,* and without claim of right, commit acts of trespass on the lands of others." An act which, as related to the true owner of land, might appear to be trespass is not in fact a trespass if the act is committed in good faith by one who actually and sincerely believes that he is authorized (either because authorized by the true owner or because he believes himself to be the true owner) to do the act in question. In fact the burden rests upon the State of proving the absence of good faith on the part of one accused of trespass, because the act must generally be shown to be wilfully done; and under the particular paragraph upon which the charge against the defendant in the present case was based, it was essential for the State to show that the presence of the accused upon the premises in question was "with no bona fide claim or color of title, and without the consent of the owner." If, therefore, the defendant had any evidence which

tended to show that he did have a bona fide claim dependent upon the consent of one who bona fide claimed to be the owner, it would be error to withhold such evidence from the jury, and thus deprive them of giving to the claim of the defendant equal consideration with that accorded to the claim of the prosecutor. In trespass it is altogether a question of bona fides, and not a question of real title. In *Cooper* v. *State,* 5 *Ga. App.* 697 (63 S. E. 719), we set aside a verdict of guilty as to two laborers who, without any knowledge of the title to the land, but in obedience to the instruction of the proper municipal officers, tore down a fence, although the evidence disclosed that the title to the land in question was without dispute in the complaining individual; this because, under the ruling of the Supreme Court in *Shrouder* v. *State,* 121 *Ga.* 615 (49 S. E. 702), *Wiggins* v. *State,* supra, and *Hateley* v. *State,* supra, the absence of any proof that the trespass was intended by the accused was fatal to the State's case. In *McClurg* v. *State,* 2 *Ga. App.* 624-626 (58 S. E. 1064), too, we held that the State must introduce such proof of bad faith as will overcome the presumption of innocence. And it follows, of course, that in rebuttal of such proof as the State adduces upon this point the defendant may submit any evidence tending to show his good faith. In *Woods* v. *State,* 10 *Ga. App.* 476 (73 S. E. 608), we held that the jury had the right to find that the claim of the accused was a mere pretext, and not made in good faith, and for that reason the judge did not err in approving their verdict; but in that case the prior declarations of the accused with reference to his claim of ownership were submitted to the jury, and we merely ruled, as we would rule in the present case if the defendant had been convicted after evidence submitted by him as to his good faith had been passed upon by the jury, that the jury had the right to prefer evidence indicating wilfulness and bad faith to that tending to show good faith.

The fact that the guardian had no authority to rent the premises without an order from the court of ordinary as provided in section 3067 of the Civil Code might be immaterial on a consideration of the motive of the accused by the jury, because the presumption that every man knows the law is not of such potency, in competition with the presumption of innocence, when imputed knowledge is applied to matters of civil contract as it generally is when the act to which the ignorance relates is one denounced by the penal laws

of the State. In other words, society, for protection against crime, indulges the presumption that all men have in mind at all times those acts which are punishable as crimes, and either abhor them' or dread the punishment which will ensue upon conviction. Crimes mala in se are presumably naturally abhorrent to a well-ordered mind and a clean conscience, and the law, in maintaining itself, by fiction extends the operation of these natural feelings so as to include statutory offenses which are merely mala prohibita. But it is to be doubted if the presumption that every man knows the law extends with such force to mere matters of civil contract, upon which depend only rights of property—such as title to land or the power of a guardian to make contracts of rental. As to such matters it seems to us that it would be for the jury to judge, from the circumstances of the case and the intelligence and education of the parties, whether they did in fact know that one who assumed to have a right was not by law entitled to it. *Judgment reversed.*