CHICAGO AND NORTH WESTERN
TRANSPORTATION COMPANY,
Appellant,

v.

CITY OF WINTHROP, Minnesota,
defendant and third party
plaintiff, Respondent,

v.

AUTO OWNERS INSURANCE COMPA-
NY, Third Party Defendant.

No. 47137.

Supreme Court of Minnesota.

July 22, 1977.

Lindquist & Vennum and Edward M. Glennon and Nadine Strossen, Minneapolis, for appellant.

Young & Moriarty and Thomas G. McCarthy, Winthrop, for respondent.

Heard before ROGOSHESKE, TODD, and PLUNKETT, JJ., and considered and decided by the court en banc.

## J. JEROME PLUNKETT, Justice.*

Plaintiff, Chicago and North Western Transportation Company, brought this action for reimbursement, pursuant to the terms of a license agreement, for amounts expended in connection with a Federal Employers' Liability Act (FELA) claim by one of its employees. The trial court granted motion of defendant, City of Winthrop, for summary judgment, and plaintiff has appealed to this court. Because the license and defendant's contractual obligations thereunder were not extinguished by a conveyance of the land, we reverse.

On October 22, 1957, plaintiff's predecessor in interest, the Minneapolis and St. Louis Railway Company, signed an agreement with the defendant, City of Winthrop, whereby defendant was given a license to construct and maintain a sewer upon the railroad's right-of-way. The agreement provided that defendant would indemnify the railroad for liability for any injury resulting from the maintenance of the sewer. In 1960, all the assets of the Minneapolis and St. Louis Railway, including the right-of-way at issue, were conveyed to the Chicago and North Western Railway Company. In 1966, defendant desired to alter or change its sewer facilities and a new license agreement was executed between the Chicago and North Western Railway Company and defendant. The 1966 agreement expressly superseded the earlier agreement and contained the following indemnity clause:

"Fifth. It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the railroad of the Railway Company, and that this license is subject to all risks thereof. Therefore, and as a material consideration to the Railway Company for entering into this license and without which the Railway Company will not enter into same, the Licensee agrees to assume and pay for all loss or damage to property whatsoever, and injury to or death of any person, or persons whomsoever, including all costs and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility, or any defect therein or failure thereof, * * *

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

and the Licensee forever indemnifies the Railway Company against and agrees to save it harmless from any and all claims, demands, law suits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto."

The agreement also provided that the license could be revoked by the railroad upon 30 days' notice and that the license was not assignable or transferable without the written consent of the railway company being first obtained.

In 1972, the Chicago and North Western Railway Company conveyed certain assets, including the right-of-way involved here, to the Chicago and North Western Transportation Company, the plaintiff herein.

On September 19, 1973, John Grogan, an employee of plaintiff, was injured by the lid of one of the manholes constructed by defendant on the railroad's right-of-way. The plaintiff paid Grogan $3,900 in settlement of his FELA claim, in addition to medical and other expenses amounting to $1,033.34. The plaintiff then brought the instant action against defendant, City of Winthrop, for indemnification pursuant to the 1966 license agreement. The defendant denied liability and made a motion for summary judgment on the grounds that the 1966 license agreement was revoked by the conveyance in 1972 of the right-of-way involved, and that plaintiff did not give defendant notice of the injury within the period specified in Minn.St. 466.05. The trial court granted said motion solely upon the grounds that the 1972 conveyance had revoked the 1966 agreement as a matter of law.

The Restatement, Property, § 512, defines a license as—

"* * * an interest in land in the possession of another which

(a) entitles the owner of the interest to a use of the land, and

(b) arises from the consent of the one whose interest in the land used is affected thereby, and

(c) is not incident to an estate in the land, and

(d) is not an easement."

Because a license is generally revocable, it is not an encumbrance upon land. It is actually a justification for acts done under the license, a sort of immunity from trespass.

1. The Restatement, Property, § 519, *comment b*, has recognized a distinction between the license itself and a contract which creates it. In the instant case the 1966 agreement is actually a contract providing that in consideration for the railroad's granting a license to the city to construct and maintain a sewer on the railroad's right-of-way, the city would assume various duties, among which was the duty to indemnify the railroad for any liability resulting from injury caused by the sewer. It is expressly stated in the 1966 agreement that the defendant's obligations were in consideration for the granting of the license. If this agreement in 1966 were solely a license, there would have been no need for the city to consent thereto as it did in this case.

2. The purpose of the rule that a license is generally revoked by a conveyance of the land is to protect the marketability of titles. Since the protection is only for the benefit of the new landowner, only he can invoke it. *Johnson v. Hegland*, 175 Minn. 592, 222 N.W. 272 (1928). In the instant case plaintiff, after the conveyance to it in 1972 and after knowledge of the existence of the license, continued to allow defendant to use its license to maintain the sewer on the railroad property. Under the circumstances the conveyance of 1972 did not operate automatically as a revocation of the license or the defendant's contractual obligation thereunder to indemnify the plaintiff.

Reversed.