**STATE of Minnesota, Respondent,**

v.

**Jane Douglass HOYT, Appellant.**

**No. 50889.**

Supreme Court of Minnesota.

April 24, 1981.

Robins, Davis & Lyons and Terry Wade, St. Paul, for appellant.

Robert Alfton, City Atty., Edward A. Backstrom, III, Asst. City Atty., Minneapolis, for respondent.

K. Craig Wildfang, Minneapolis, for Minn. Ass'n of Health Care Facilities.

Briggs & Morgan, Leonard J. Keyes and John R. Kenefick, St. Paul, for St. Mary's Rehabilitation Center, amicus curiae.

Toby S. Edelman, National Senior Citizens Center, Washington, D.C., amicus curiae.

Laurie N. Davison, Legal Aid Society of Minneapolis, Minneapolis, for National Citizen's Coalition for Nursing Home Reform, amicus curiae.

Linda M. Ojala, Minneapolis, for Minnesota Civil Liberties Union, amicus curiae.

AMDAHL, Justice.

Defendant appeals from an order of a Hennepin County District Court appellate panel affirming her conviction of trespass upon the premises of St. Mary's Rehabilitation Center.[1] Minn.Stat. § 609.605(5) (1980).

Prior to trial an evidentiary hearing was held to determine the admissibility of defendant's proffered testimony as to her defense of claim of right. Defendant made an offer of proof and the trial court ruled the testimony of 21 witnesses inadmissible in total; the testimony of 3 witnesses, including defendant, partially inadmissible; and the testimony of one witness admissible. Following the trial court's ruling on the evidentiary issues, defendant waived trial by jury specifically reserving, through stipulation with the prosecution, all issues for appeal.[2]

On July 3, 1979, the prosecution case was submitted to the court on stipulated facts and the limited testimony in defendant's offer of proof which the court held admissible. Based on the stipulation and such testimony, the trial court found defendant guilty and sentenced her to 30 days in the Hennepin County Adult Corrections Facility. The court stayed the sentence for 1 year on condition that defendant not re-enter St. Mary's Rehabilitation Center. An appeal was taken to the district court where the conviction was affirmed.

Sharon Siebert is a brain-damaged resident of St. Mary's Skilled Nursing Home. In April 1977, when defendant, who is not related to Ms. Siebert, first began visiting her, the latter was in a vegetative or semi-vegetative state, unable to speak, to take food orally, or to respond to stimuli to any significant sense. For approximately 22 months, commencing on April 3, 1977 and continuing until her arrest for trespass, defendant visited Ms. Siebert almost daily and worked with her to improve—at least in defendant's mind—Ms. Siebert's care and condition. During that time defendant made many complaints to many persons in and out of the facility and to agencies overseeing skilled nursing facilities concerning the care provided to Ms. Siebert. In October 1977, defendant petitioned to be appointed guardian of the person of Ms. Siebert. About the same time, Siebert's parents, Earl and Julie Bigalke, petitioned for the appointment of themselves as co-guardians of the person and estate of Sharon. By order dated November 8, 1977, the probate court granted the petition of the Bigalkes. An appeal of the probate court

---

1. St. Mary's Rehabilitation Center is privately owned and consists of the Skilled Nursing Home, the Rehabilitation Medicine Center and the Adult Chemical Dependency Unit. The Rehabilitation Medicine Center and the Skilled Nursing Home are on the same floor but occupy separate space, are separately organized and have separate medical directors.

2. At the trial and district court appeal levels, the defendant maintained that the phrase "without claim of right" in the trespass statute was an element of the crime rather than an exception to the statute. The trial court, citing *Williams v. United States*, 138 F.2d 81 (D.C.Cir. 1943) and *State v. Paige*, 256 N.W.2d 298 (Minn. 1977), disagreed, holding that the phrase created an exception and imposed upon the defendant the burden of presenting a prima facie case that she came within the exception

before the state would be required to prove the contrary beyond a reasonable doubt. It was for that reason that defendant made the offer of proof in the county court. The trial court determined that defendant had failed to make a prima facie showing that a claim of right existed and informed counsel that the jury would be instructed to that effect. The defendant than waived a jury trial. The district court appellate panel concurred in the trial court's ruling, placing the burden of presenting a prima facie case on defendant. In argument on appeal to this court, counsel for the defendant stated that he believed the trial court and appellate panel were correct in their analysis of the law in such respect and withdrew that issue from the instant appeal. Thus, this court need not consider the issue for purposes of this case.

order was taken to a district court appellate panel where the probate court action was affirmed. A petition was filed for a discretionary appeal to the supreme court; that petition was denied.

St. Mary's Skilled Nursing Home is licensed by the state as a skilled nursing facility which is defined by the state as one providing care ordered by physicians and delivered by licensed nursing personnel 24 hours a day, 7 days a week. Minn.Stat. § 144.50 (1980). The facility is subject to licensing, inspections and regulations by both the state and federal governments. The funds to operate the home come predominantly from private sources; very little state or federal funding is received.

Most of the residents of the skilled nursing home are essentially restricted to the facility due to physical and mental infirmities. The facility provides basically all of the residents' needs including meals, linen, personal care items, recreation, educational programs, religious facilities and all medical services. A substantial number of the residents are bedridden and few leave the facility for social or other purposes.

The stipulated facts presented to the trial court are substantially these:

On February 1, 1979, defendant received a letter from Terrence J. Brenny, administrator of St. Mary's Rehabilitation Center. The letter stated:

> In view of the Center's obligation to preserve a tranquil atmosphere for patient care and employee morale, you are advised that your privilege to enter the premises of St. Mary's Rehabilitation Center has been revoked. Any future entry for any purpose will be considered a trespass and will be dealt with accordingly.

On February 27, 1979, defendant entered the premises of St. Mary's Rehabilitation Center, refused to leave voluntarily although requested to do so by several persons including a police officer, and was arrested for criminal trespass to property pursuant to Minn.Stat. § 609.605(5) (1980). The statute provides in relevant part:

> Whoever intentionally does any of the following is guilty of a misdemeanor:
>
> \*   \*   \*   \*   \*   \*
>
> (5) Trespasses upon the premises of another and, *without claim of right,* refuses to depart therefrom on demand of the lawful possessor thereof \* \* \*.

(Emphasis added.)

Defendant also concedes that she was not at the time of her arrest acting as a representative of any group or organization and that she was on the premises for the sole purpose of visiting Sharon Siebert, a resident of the Skilled Nursing Home.

Before Mr. Brenny sent his letter barring defendant from the premises of St. Mary's Rehabilitation Center, he discussed the matter with Dr. Salchert, the medical director of the Skilled Nursing Home, Dr. Hedrick, Sharon's attending physician, and with the parent-guardians, Mr. and Mrs. Bigalke, all of whom, at the least, acquiesced in the proposed action.[3] There is nothing in the record to indicate that defendant was informed that Dr. Salchert, Dr. Hedrick or the parent-guardians had any part in Mr. Brenny's action.

Defendant asserts that she had a claim of right as contained in the trespass statute to enter St. Mary's Rehabilitation Center. Her assertion is based on three grounds:

(1) The first and fourteenth amendments to the United States Constitution;

(2) Standard: Patients' Rights, 42 C.F.R. § 405.1121(k) (1980) and Patients and Residents of Health Care Facilities; Bill of Rights, Minn.Stat. § 144.651 (1980).

(3) A bona fide claim of right in that she believed she had a right to enter St. Mary's and that she had reasonable grounds for such belief.

The state concedes that if defendant had either a constitutional or statutory right to be on the premises, the trespass statute is inapplicable.

---

3. Mr. Brenny further testified: "The entire organization, the administration, board of directors, department heads, director of nursing, charge nursing, all people involved, the physicians, medical directors, all supported the action to be taken."

### (I) The United States Constitution

Although St. Mary's Rehabilitation Center is privately owned, it is defendant's position that her first amendment rights of speech and association cannot be abridged by the facility because it is the functional equivalent of an ordinary town under. *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Marsh,* a Jehovah's Witness was arrested and convicted under a state trespass statute while distributing religious literature on the streets of a business district located in a company owned town. The town and business district were open and freely accessible to the public in general. The Court noted that although privately owned, the town had the earmarks of an ordinary municipality and functioned no differently than any other town. In reversing the trespass conviction, the Supreme Court held that the company could not curtail the exercise of first amendment rights on its property just as it would be improper for a municipality to do so.

■ We are aware that one court to date has held that a privately-owned nursing home is the "functional equivalent" of a town and therefore subject to first amendment proscriptions. *Teitelbaum v. Sorenson,* Civ. No. 79–199 PHX WEC (D.Ariz. July 3, 1979) (order denying motion to dismiss and granting preliminary injunction), *judgment entered,* (D.Ariz. August 6, 1979) (granting permanent injunction), *appeal docketed,* No. 793530 (9th Cir. August 30, 1979). We do not decide constitutional questions except when necessary to do so in order to dispose of the case at bar. *State v. North Star Research & Development Institute,* 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972); *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46, 62, 74 N.W.2d 286, 296 (1955). Because we reverse the conviction on other grounds, we deem it unnecessary to reach the constitutional claim herein presented.

### (II) The Federal Regulations and the Minnesota Statute

Defendant asks us to hold that she had the authority to enforce the rights granted to Ms. Siebert by Standard: Patients' Rights, 42 C.F.R. § 405.1121(k) (1980) and Patients and Residents of Health Care Facilities; Bill of Rights, Minn.Stat. § 144.651 (1980). While there may be some argument as to a guardian's authority under the federal regulations because only certain of the listed rights devolve to a guardian, there can be no argument under the statute for it provides "[a]ny guardian or conservator of a patient or resident * * * may seek enforcement of these rights on behalf of a patient or resident." *Id.*

The statute accords certain rights to patients and residents of nursing facilities including facilities such as St. Mary's Skilled Nursing Home, and further provides that the facility may not require a waiver of the rights as a condition of admission to the facility. The express intent of the statute is to "promote the interests and well being of the patients and residents of health care facilities." Minn.Stat. § 144.651 (1980).

Among the rights enunciated by the statute is:

(17) Every resident may associate and communicate privately with persons of his choice * * * unless medically contraindicated and documented by his physician in the medical record. * * *

Minn.Stat. § 144.651(17) (1980).

■ The state is correct in its argument that neither 42 C.F.R. 405.1121(k) (1980) nor Minn.Stat. § 144.651 (1980) grant enforcement authority to a person in defendant's position. The regulations and the statute give enforcement authority to the patient or resident or, if a guardian has been appointed, to the guardian. The reference to the rights is made, however, because it reinforces defendant's claim of right as discussed below in that a resident or a resident's guardian, not the nursing home administration,[4] is given the right to

---

**4.** The parties here do not, and indeed cannot, question the right of St. Mary's Rehabilitation Center to establish and enforce reasonable rules and regulation controlling the time, place and manner of visitation.

determine who may associate with, i. e., visit, the resident, unless medically contraindicated and documented by the resident's physician in the medical record. There is no evidence here that the visitation by defendant was medically contraindicated in Ms. Siebert's medical record or that if such were the case, that defendant was ever informed of the fact.

### (3) The Bona Fide Claim of Right

The state cites *Carpenter v. Coles*, 75 Minn. 9, 77 N.W. 424 (1898) for the proposition that the phrase "claim of right" in Minn.Stat. § 609.605(5) (1980) is a term of art and means a claim of title or ownership. This court, in an adverse possession case, stated that the terms

"claim of right," "claim of title," and "claim of ownership" * * * mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others * * * [and that] the presence or absence of good faith of the [adverse] possessor, or whether the possession originated in a naked trespass, or was taken under color or claim of title, is wholly immaterial.

75 Minn. at 11, 77 N.W. at 424. The state recognizes that an adverse possessor need not act in good faith but argues that the quoted language makes clear that a claim of right, whether or not it is held in good faith, means a claim of ownership and that since defendant did not assert a claim of ownership or title to St. Mary's, her claim of right that she was acting in good faith is meaningless and no defense to the trespass charge.

■ A claim of right under section 609.-605(5) is not limited to a claim of title or ownership. Express or implied consent—a license—to a person from one who has the authority to give such consent is a defense to a charge of criminal trespass. In *Commonwealth v. Richardson*, 313 Mass. 632, 48 N.E.2d 678 (1943), the court reversed convictions of Jehovah's Witnesses charged with criminal trespass on complaint of an apartment building owner. The court there determined "the defendants were at least licensees of the respective tenants who afforded them the opportunity to enter and state their mission," 313 Mass. at 640, 48 N.E.2d at 683, and concluded:

In the instant case the defendants were lawfully in the vestibule, where the means for communicating with the respective tenants had been installed that the tenants might at will release to lock and give access to those seeking to see them. Of course, they could decline to do so if they saw fit. The releasing of the lock, we think, must be held to have at least conferred upon the defendants a license or permission to enter the inner halls, to approach the apartments in question, and, if permitted by the tenant, to state the object of their call. This was a license for the tenants to grant or withhold, one embraced within the easement conferred upon them by the letting, one which subsisted until revoked by the tenants, and one which the tenants could exercise notwithstanding objections of the landlord, who could not revoke the license any more than he could an invitation extended by the tenant to one calling upon any legitimate business.

*Id.*

This court considered the defense of license to be upon premises and the principle of *Richardson*, in distinguishing the facts giving rise to the license in *Richardson* from the facts precluding a finding of implied consent and a license in the case before it, *State v. Quinnell*, 277 Minn. 63, 151 N.W.2d 598 (1967), a criminal trespass action also brought under Minn.Stat. § 609.-605(5) (1980), and there concluded:

Defendant seems also to argue that, because a large part of the stockyards were leased to independent commission firms, the demonstrators were *implied licensees* of those commission firms, and Stockyards was therefore without power to revoke the license, citing *Commonwealth v. Richardson*, 313 Mass. 632, 48 N.E.(2d) 678, 146 A.L.R. 648, in support of

their (sic) contention. To state the facts, however, is to distinguish the cases at once. The *Richardson* trespass complaints arose out of the demand of an apartment-building landlord that Jehovah's Witnesses refrain from entering upon the premises for the purpose of making peaceful communication with his apartment tenants. It is undisputed, in contrast, that neither the hog chutes nor the East Chute Road giving access thereto was owned or possessed by the commission firms but by Stockyards only, so that no rights of tenants were here involved. Even were this not so, the physical obstructing of the stockyards, for the apparent purpose of compelling a change in its marketing methods, would seem to be equally hostile to the commission firms and would equally negative any notion of *implied consent.* * * *

277 Minn. at 69–70, 151 N.W.2d at 603 (emphasis added).

■ One in possession of premises by permission of a tenant who is entitled to possession is not a trespasser but a licensee. *Keithley v. Hettinger*, 133 Minn. 36, 157 N.W. 897 (1916).

> A license is a mere power, authority, or personal privilege. It does not create an estate or interest in land, and it may be created by parol. A licensee is one who has mere permission to use land, dominion over it remaining in the owner, and no interest in or exclusive possession of it is given to the occupant.

11A M. Dunnell, Dunnell Minnesota Digest 2d *Licenses in Real Property* § 1.00 (3d ed. 1978) (footnotes omitted).

In *Chicago and North Western Transportation Co. v. City of Winthrop*, 257 N.W.2d 302, 304 (Minn. 1977), this court succinctly stated:

> Because a license is generally revocable, it is not an encumbrance upon land. It is actually a justification for acts done under the license, *a sort of immunity from trespass.*

(Emphasis added).

■ A person visiting a nursing home resident with express or implied consent of the resident or of the guardian of the resident is no less a licensee entitled to use the *means of ingress and egress to make such visitation possible* than is a person visiting an apartment building tenant.

If the guardians had never given express consent or had withdrawn express consent, or if they had acted in such manner as to give rise to implied consent which had been withdrawn, defendant would have no license to enter St. Mary's to visit Ms. Siebert and would have no claim of right defense. If express or implied consent of the guardians existed on the date of the alleged trespass, or if defendant had not been informed of the withdrawal of previously existing express or implied consent, she had a claim of right defense to the trespass charge.

*Quinnell* referred to a claim or right in this manner:

> The Advisory Committee Comment on the new Criminal Code, 40 M.S.A. p. 570, commenting on the statutory reference to trespass "without claim of right," observes that those words simply cover bona fide claims of right and that "[a] false claim would not be a claim at all," language obviously relating to protection of an innocent trespasser from criminal prosecution.

277 Minn. at 70–71, 151 N.W.2d at 604.

■ The claim of right is a defense only if it is bona fide. The reason for allowing a defendant in a criminal trespass case the defense of a bona fide belief of claim of right is that the law generally does not punish persons who commit an offense without criminal intent. A bona fide belief, i. e., a good faith claim of right, negatives the criminal intent required by Minn.Stat. § 609.605(5) (1980). 75 Am.Jur.2d *Trespass* § 87 (1974) states the point this way:

> Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent, and if the act prohibited is committed in good faith under claim of right or color of title, although the accused is mistaken as to his right, unless it is committed with

force or violence of a breach of the peace, no conviction will lie, since it will not be presumed that the legislature intended to punish criminal acts committed in ignorance, by accident or under claim of right, and in the bona fide belief that the land is the property of the trespasser, unless the terms of the statute forbid any other construction.

*Id.* (footnote omitted).

In *Hayes v. State,* 13 Ga.App. 647, 79 S.E. 761 (1913) cited, and quoted from, by the state, a criminal trespass action for title to property was in dispute. The court discussed the trespass statute and quoted from a prior case which held that criminal trespass "was not designed to try disputed land titles, but to punish those who wilfully, and without claim of right, commit acts of trespass on the lands of others." 13 Ga.App. at 649, 79 S.E. at 762. The court then continued to discuss trespass and the defense of good faith in this language:

An act which, as related to the true owner of land, might appear to be trespass is not in fact a trespass, if the act is committed in good faith by one who actually and sincerely believes that he is authorized (either because authorized by the true owner, or because he believes himself to be the true owner) to do the act in question. In fact the burden rests upon the state of proving the absence of good faith on the part of one accused of trespass, because the act must generally be shown to be willfully done, and, under the particular paragraph upon which the charge against the defendant in the present case was based, it was essential for the state to show that the presence of the accused upon the premises in question

was "with no bona fide claim or color of title, and without the consent of the owner." If, therefore, the defendant had any evidence which tended to show that he did have a bona fide claim dependent upon the consent of one who bona fide claimed to be the owner, it would be error to withhold such evidence from the jury, and thus deprive them of giving to the claim of the defendant equal consideration with that accorded to the claim of the prosecutor. *In trespass it is altogether a question of bona fides, and not a question of real title.*

*Id.* at 649–650, 79 S.E. at 762 (emphasis added).

■ The issue before the court is whether defendant, in her offer of proof, presented a sufficient prima facie case of claim of right to create a fact issue; that is, she believed she had a license to enter St. Mary's and there were reasonable grounds for her belief.[5]

Defendant testified at the hearing that: she had visited Sharon Siebert almost daily for some 22 months; the guardians were aware of her visits and her actions with Ms. Siebert; the guardians had never told her not to visit; and the guardians and their minister encouraged defendant's involvement and advocacy on behalf of Ms. Siebert.

Moreover, there was no showing that defendant was at any time informed, until subsequent to her arrest, that the guardians had consented to, or acquiesced in, the decision of Mr. Brenny to bar her from the facility.

Excerpts of the testimony by guardian Earl Bigalke offered as a part of the defendant's offer of proof are material here:

---

5. The district court appellate panel agreed that the criteria stated in *State v. Baker,* 231 N.C. 136, 56 S.E.2d 424 (1949) were proper for a determination of claim of right. The court there, in a criminal trespass action, declared:

Although the State may prove beyond a reasonable doubt in a prosecution under this statute that the accused intentionally entered upon land in the actual or constructive possession of the prosecutor [owner] after being forbidden to do so by the prosecutor and thus establish as an ultimate fact that the accused

entered the locus in quo without legal right, the accused may still escape conviction by showing as an affirmative defense that he entered under a bona fide claim of right. * * * When an accused seeks to excuse an entry without legal right as one taking place under a bona fide claim of right, he must prove two things: (1) That he believed he had a right to enter; and (2) that he had reasonable grounds for such belief.

*Id.* at 140, 56 S.E.2d at 427 (citations omitted).

Q But it was his idea that she be barred, was it not?

A I don't know.

Q Was it your idea, sir?

A No.

Q I am sorry, I didn't hear you.

A No, no sir.

At a later portion of the record:

Q And again just so the record is clear, it was not your idea to bar Jane from the facility, was it?

A No, sir.

The questions continued and the transcript reveals the further exchange:

Q Mr. Bigalke, you knew that Jane was working with Sharon and has been for the last two years?

A Yes, sir.

Q You know, for example, in the guardianship trial that she was attempting to teach her to speak and open her mouth and do other things of that sort, didn't you?

A I don't know at that particular time, but she worked with her, I realize that.

Q During the process of the guardianship matter you indicated to your attorney that you didn't object to her continuing that, didn't you?

A I don't recall.

Q That's possible, though, isn't it, sir?

A Probably.

Q You probably said that?

A Probably.

Q And you have never specifically told Miss Hoyt not to continue working with Sharon yourself, have you?

A I don't believe so.

Q You certainly never told Miss Hoyt not to visit Sharon?

A I don't believe so.

The foregoing testimony is reinforced by testimony of defendant in answer to a question by her counsel:

Q Have either Mr. or Mrs. Bigalke ever advised you to stop your activities or not see Sharon?

A Never.

We hold that the defendant through her offer of proof made out a sufficient prima facie defense of bona fide claim of right to require the case to be submitted to a finder of fact where the burden is on the state to establish the contrary beyond a reasonable doubt.

Contrary to the view expressed by the dissent, the nursing home is not without power to exclude disruptive persons from its premises. If a visitor on the nursing home premises is engaged in disruptive conduct, the nursing home has at the very least the right to seek a complaint for disorderly conduct pursuant to Minn.Stat. 609.72 (1980). See also footnote 4.

The order of the district court appellate panel affirming the judgment of conviction in the Hennepin County Municipal Court is reversed.

SCOTT, Justice (dissenting).

I must respectfully dissent. The majority opinion, when carried to its logical conclusion, conflicts with sound public policy. Although it is understandable that certain sympathies are generated by the defendant's well-intended actions, these particular facts should not be applied to reduce the historical application of the trespass statute to a state of uselessness.

Under the majority opinion, only the guardian has authority to prevent disruptive individuals from visiting nursing home patients. The nursing home has no similar authority. Thus, once a guardian grants an individual permission to visit a patient, the nursing home may not request that individual to leave the premises. The operators of nursing homes and similar institutions will be powerless to use the trespass statute regardless of an individual's actions.

It is difficult to understand the basis for the majority's decision that the phrase "claim of right" in Minn.Stat. § 609.605(5) (1980) does not mean a claim of title or legal ownership. The majority's determination that the defendant had a "license" to be on the property ignores the historical

distinction between a "claim of right" and "rights" in general. To negate the criminal intent required by Minn.Stat. § 609.605(5) (1980) a defendant must have a good faith belief that he has a right to be on the premises *and* exercise a bona fide claim of ownership or title. These essential elements are discussed in 75 Am.Jur.2d *Trespass* § 87 (1974), as follows:

> Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent, and if the act prohibited is committed in good faith *under claim of right or color of title,* although the accused is mistaken as to his right, unless it is committed with force or violence of a breach of the peace, no conviction will lie, since it will not be presumed that the legislature intended to punish criminal acts committed in ignorance, by accident or *under claim of right, and in the bona fide belief that land is the property of the trespasser,* unless the terms of the statute forbid any other construction.

*Id.* (emphasis added).

The advisory committee comments to the 1963 Criminal Code also are instructive. That committee indicated:

> The phrase "without claim of right" in the recommended clause is intended only to covered [sic] bona fide claims of right. A false claim would not be a claim at all.

*Id.* The phrase "bona fide claims" obviously refers to situations in which the defendant's "offense was the product of inadvertence or unwariness." *State v. Quinnell,* 277 Minn. 63, 70, 151 N.W.2d 598, 604 (1967). As in *Quinnell,* there was no mistake or inadvertence in regard to the defendant's conduct. She received a letter of exclusion, intentionally entered the premises, and refused to depart when requested to do so by the Minneapolis Police. Therefore, our decision in *Quinnell* mandates an affirmance of the lower court's decision.

Because I believe that the trespass statute has been violated, it is necessary to examine appellant's claim that she has a constitutional right to enter St. Mary's Rehabilitation Center.

Appellant contends that her first amendment rights of speech and association have been abridged because St. Mary's Rehabilitation Center falls within the company town doctrine of *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Under *Marsh,* a private entity that has all the attributes of an ordinary municipality will be treated as a governmental entity, thereby satisfying the state action requirement.

I do not believe that St. Mary's Skilled Nursing Home is the functional equivalent of an ordinary municipality for first amendment purposes. Recent decisions from the United States Supreme Court indicate that *Marsh* is inapplicable unless the private property owner exercises all of the traditional functions of a municipality. *See Hudgens v. NLRB,* 424 U.S. 507, 520, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976) (large self-contained shopping center held not to be the functional equivalent of a municipality); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 (1972) (same). Because St. Mary's Skilled Nursing Home clearly lacks sufficient indicia of a municipality, the *Marsh* doctrine has no application. Since *Marsh* is inapplicable, appellant has no constitutional right to be on the premises. As no constitutional impediments mandate a contrary result, I would affirm the lower court's decision that appellant violated the trespass statute.