*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0901**

Brad Hammerberg, as trustee for the
Leonard J. and Margaret T. Schubert
Irrevocable Trust, dated June 23, 2005,
Respondent,

vs.

Minnesota Department of Human Services, et al.,
Appellants.

**Filed April 22, 2024
Reversed
Larson, Judge**

Mille Lacs County District Court
File No. 48-CV-22-1916

Kenneth H. Bayliss, Bradley W. Hanson, Chad A. Staul, Quinlivan & Hughes, PA, St. Cloud, Minnesota (for respondent)

Keith Ellison, Attorney General, R.J. Detrick, Assistant Attorney General, St. Paul, Minnesota (for appellants)

Lauren L. Fink, J. Noble Simpson, Christopher J. Kradle, Maser, Amundson & Boggio, PA, Richfield, Minnesota (for Amicus Curiae MSBA Elder Law Section)

Considered and decided by Reyes, Presiding Judge; Larson, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant Minnesota Department of Human Services (DHS) challenges a district court order reversing a DHS decision that real property held in a trust was subject to a lien

under Minn. Stat. § 265B.15 (2022) for the amount of medical assistance (MA) provided to decedent Margaret Schubert during her lifetime. Because the agency correctly determined the real property was subject to a lien, we reverse the district court.

**FACTS**

The parties stipulated to the following facts. Leonard and Margaret Schubert[1] owned real property in Mille Lacs County. In 2005, the Schuberts created an irrevocable trust, naming respondent Brad Hammerberg as trustee. As relevant here, the Schuberts conveyed real property valued at approximately $480,228 to the trust. The trust instrument provided, in relevant part, that "[t]he settlors or the survivor of them shall be entitled to the use and possession of any real estate held in the trust." The trust instrument also stated:

> On the death of the survivor of the settlors, the trustee shall distribute all property then belonging to the income or principal of the trust to such person or persons out of a class composed of [the settlors'] descendants . . . and in such estates, interests and proportions, as the surviving settlor may, by a will specifically referring to this Article, appoint.

Thus, upon the death of the Schuberts, the trust instrument required distribution of the remaining assets to the Schuberts' descendants *per stirpes*, subject to the Schuberts' ability to modify the distribution of the assets in their will. The trust instrument required the trustee to pay all income derived from the trust to the Schuberts. The Schuberts also had the right to remove and replace the trustee. The trustee had the authority to distribute some

---

[1] Because Leonard and Margaret share a last name, we refer to them by their first names for clarity.

or all of the principal from the trust to the Schuberts' living children during the Schuberts' lifetime.

Leonard died in 2017 without receiving MA. Margaret applied for MA in 2016. Margaret was determined to be eligible, but the real property held in the trust was not considered an asset. On March 28, 2019, Margaret died after receiving $210,396.93 in MA.

In March 2018 and October 2019, DHS recorded notices of potential claims (hereinafter, the liens) against the real property held in the trust to recover MA paid on behalf of Margaret. In December 2019, Hammerberg requested that DHS withdraw the liens because, in part and primarily, Margaret did not own the real property at the time of her death. DHS declined.

On May 2, 2022, Hammerberg requested a DHS fair hearing. On June 30, 2022, a human-services judge (HSJ) held a dispositive-motion hearing pursuant to Minn. Stat. § 256B.15, subd. 1f(c). Following the hearing, the HSJ recommended that the DHS commissioner affirm DHS's determination that the property was subject to the liens and MA recovery. The HSJ specifically recommended that the appeal was untimely and, even if it was timely, DHS could recover the value of its claims. *See* Minn. Stat. § 256B.15, subd. 1a(b)(5). The commissioner, through her designee the co-chief HSJ, adopted the recommendation.

On September 23, 2022, Hammerberg appealed the commissioner's decision to the district court pursuant to Minn. Stat. § 256.045, subd. 7 (2022). Following a hearing, the district court reversed the commissioner's decision.

3

DHS appeals.

**DECISION**

DHS challenges the district court's decision to reverse the commissioner's determination that the real property held in the trust was properly subject to MA recovery under section 256B.15. After a district court's review, where it accepts no new evidence, we independently review an agency decision without deferring to the district court. *In re Gillette Children's Specialty Healthcare*, 883 N.W.2d 778, 784-85 (Minn. 2016). We show "substantial judicial deference to the fact-finding processes of the administrative agency." *Quinn Distrib. Co. v. Quast Transfer, Inc.*, 181 N.W.2d 696, 699-700 (Minn. 1970).

We review appeals pursuant to section 256.045 using the standard set forth in the Minnesota Administrative Procedure Act, Minn. Stat. §§ 14.001-.69 (2022). *Zahler v. Minn. Dep't of Hum. Servs.*, 624 N.W.2d 297, 301 (Minn. App. 2001), *rev. denied* (Minn. June 19, 2001). We may reverse or modify the commissioner's decision

> if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
>
> (a) in violation of constitutional provisions; or
>
> (b) in excess of the statutory authority or jurisdiction of the agency; or
>
> (c) made upon unlawful procedure; or
>
> (d) affected by other error of law; or
>
> (e) unsupported by substantial evidence in view of the entire record as submitted; or

4

(f) arbitrary or capricious.

Minn. Stat. § 14.69. We review legal questions de novo. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008).

With these standards in mind, we begin by briefly outlining the law regarding MA benefits and notices of potential claims. We then address whether DHS appropriately recorded the liens on the real property held in the trust. Finally, we address the appropriate disposition in this case.

**I.**

Medicaid is a cooperative federal-state program that provides medical assistance for certain persons "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1 (2018); *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985); *In re Schmalz*, 945 N.W.2d 46, 50 (Minn. 2020). The federal Medicaid program grants "financial assistance to [s]tates that choose to reimburse certain costs of medical treatment for needy persons." *Schweiker v. Gray Panthers*, 453 U.S. 34, 36 (1981) (quotation omitted); *see also Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn. 2002) (stating that Medicaid "is a publicly funded program to ensure medical care to certain individuals who lack the resources to cover the costs of essential medical services").

A state's participation in Medicaid is voluntary. *Choate*, 469 U.S. at 289 n.1; *Schmalz*, 945 N.W.2d at 50. Each participating state enacts and "administers its own program." *Barg*, 752 N.W.2d at 58-59. Minnesota participates in Medicaid through its medical assistance (as previously indicated, MA) program established under Minn. Stat.

5

§§ 256B.01-.851 (2022). To receive federal Medicaid funds, Minnesota must, in relevant part, "comply with the provisions of [42 U.S.C. § 1396p] with respect to liens, adjustments and recoveries of medical assistance correctly paid, . . . transfers of assets, and treatment of certain trusts." 42 U.S.C. § 1396a(a)(18) (2018) (footnote omitted). DHS is responsible for administering the MA program. *See* Minn. Stat. § 256.01, subd. 2(a) (2022) (stating that the DHS commissioner shall "[a]dminister and supervise all forms of public assistance provided for by state law").

Minnesota has long required MA recipients "to use their own assets to pay their share of the cost" for care. *Barg*, 752 N.W.2d at 61. The estate-recovery statute provides that, within one year after an MA recipient's death, DHS may record a notice of potential claim against property held by the estate in the records office of the applicable county. Minn. Stat. § 256B.15, subd. 1c(a)-(b). A notice of potential claim constitutes a lien on the property. *Id*., subd. 1f(a). DHS, as the lien claimant, can recover MA costs through various mechanisms depending on the surviving status of the deceased recipient's relatives, if any. *See id*., subds. 1h-1j.

Under federal law, an "estate" subject to Medicaid recovery "include[s] all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law." 42 U.S.C. § 1396p(b)(4)(A) (2018). Since 1993, federal law has also permitted states to expand the definition of "estate" for Medicaid recovery purposes to include:

> any other real and personal property and other assets in which
> the individual had any legal title or interest at the time of death
> (to the extent of such interest), *including such assets conveyed*

6

to a survivor, heir, or assign of the deceased individual *through* joint tenancy, tenancy in common, survivorship, life estate, *living trust*, or other arrangement.

*Id*., (b)(4)(B) (emphasis added). Thus, a state may elect to recover assets that "under ordinary probate law, would not be part of the [decedent's] estate." *Barg*, 752 N.W.2d at 61.

In 2009, the Minnesota Legislature exercised this option and amended section 256B.15, subdivision 1a(b), to expand the definition of a decedent's estate for the purposes of MA recovery.[2] 2009 Minn. Laws ch. 79, art. 5, § 39, at 776-77. Today, section 256B.15, subdivision 1a(b)(5) provides, in relevant part, that a decedent's estate includes "*assets conveyed to a* survivor, *heir*, or assign of the person *through* survivorship, *living trust*, transfer-on-death of title or deed, or other arrangements." (Emphasis added.)

**II.**

DHS asks this court to reverse the district court's order on the ground that the commissioner correctly determined DHS could place the liens on the real property in the trust. DHS specifically argues that under section 256B.15, subdivision 1a(b)(5), the real property held in the trust is part of Margaret's estate because, absent the lien, the real property would pass to her heirs upon her death via a living trust.

DHS presents a question of statutory interpretation, which we review de novo. *Schmalz*, 945 N.W.2d at 49 n.3. The goal of statutory interpretation is to effectuate the

---

[2] Prior to 2009, section Minn. Stat. § 256B.15 did not include any reference to trusts. *See* Minn. Stat. § 256B.15, subd. 1a (2008) (referring only to the "estate" of the person in question).

intent of the legislature. Minn. Stat. § 645.16 (2022). The first step is to determine whether the language of the statute is ambiguous. *Olson v. Lesch*, 943 N.W.2d 648, 656-57 (Minn. 2020). "A statute is unambiguous if it has only one reasonable interpretation." *In re Welfare of Children of J.D.T.*, 946 N.W.2d 321, 327 (Minn. 2020). We afford some deference to an agency's interpretation "where the statutory language is technical in nature, and the agency's interpretation is longstanding." *Special Sch. Dist. No. 1 v. E.N.*, 620 N.W.2d 65, 68 (Minn. App. 2000). However, "we owe no deference to an agency's interpretation of an unambiguous statute." *Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 594 n.1 (Minn. 2014). When interpreting a statute, we read "words and phrases . . . according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2022). When a statute does not define a legal term, we may look to legal definitions to determine the plain meaning of the term. *See Getz v. Peace*, 934 N.W.2d 347, 354-55 (Minn. 2019).

As set forth above, Minnesota defines a person's estate for the purpose of MA recovery to include "assets conveyed to a[n] . . . heir . . . through . . . [a] living trust." Minn. Stat. § 256B.15, subd. 1a(b)(5). Here, the parties do not dispute that the trust instrument created a living trust. *See Black's Law Dictionary* 1821 (11th ed. 2019) (defining both "living trust" and "inter vivos trust" as "[a] trust that is created and takes effect during the settlor's lifetime"); *see also, e.g.*, *First & Am. Nat'l Bank of Duluth v. Higgins*, 293 N.W. 585, 590-92 (Minn. 1940). And the trust instrument explicitly provided that "[o]n the death of the survivor of the settlors, the trustee shall distribute all property then belonging to the income or principal of the trust to such person or persons out of a class composed of [the

settlors'] descendants." Accordingly, the trust instrument provided that, upon Margaret's death, the real property would be conveyed to Margaret's heirs "through . . . [a] living trust," as required for the real property be part of Margaret's "estate." *See* Minn. Stat. § 256B.15, subd. 1a(b)(5). Thus, the conveyance falls within the plain language of the statute.[3]

In response, Hammerberg makes three main arguments, which we address in turn. Hammerberg first argues that we cannot read the Minnesota statute so broadly because section 1396p(b)(4)(B), the federal authorizing statute, has narrower language. Hammerberg points to the parenthetical phrase, "(to the extent of such interest)," 42 U.S.C. § 1396p(b)(4)(B), arguing this language excludes conveyances via living trusts. We disagree. Hammerberg's interpretation of the federal authorizing statute is unreasonable when the parenthetical phrase is read in the context of the entire sentence. The federal authorizing statute provides that a state can define the estate to include:

> any . . . real . . . property . . . in which the individual had any legal title or interest at the time of death (to the extent of such interest), *including such assets conveyed* to a[n] . . . heir . . . of the deceased individual *through* . . . [a] *living trust*."

---

[3] We granted leave to the Elder Law Section of the Minnesota State Bar Association to submit a brief as amici curiae. *See* Minn. R. Civ. App. P. 129.01(a). Hammerberg and the amicus argue that only life estates and joint tenancies fall within the definition of an "estate" under section 256B.15. But Hammerberg and the amicus describe the law as it existed before the legislature expanded the definition of "estate" for the purpose of MA recovery in 2009. *See* 2009 Minn. Laws ch. 79, art. 5, § 39, at 776-77. Today, section 256B.15, subdivision 1a(b), plainly contemplates that an individual's estate includes interests beyond life estates and joint tenancies.

42 U.S.C. § 1396p(b)(4)(B) (emphasis added). To interpret the parenthetical phrase to exclude conveyances via living trusts would render the language "including such assets conveyed to a[n] . . . heir . . . *through* . . . [a] *living trust*" meaningless. *Id.* (emphasis added); *see also Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) ("A statute should be interpreted . . . to give effect to all of its provisions. . . ."). Thus, we disagree with Hammerberg that the federal authorizing statute warrants a different result in this case.

Second, Hammerberg contends we should affirm the district court's order because DHS failed to identify the specific type of interest Margaret possessed in the real property at the time of her death. Again, we disagree. Neither the federal authorizing statute nor the Minnesota statute require DHS to identify the legal interest the individual possesses before placing a notice of potential claim on real property. *See* 42 U.S.C. § 1396p(b); Minn. Stat. § 256B.15, subd. 1a. Therefore, the commissioner did not commit reversible error when it failed to identify Margaret's legal interest in the real property held in the trust.[4]

---

[4] The district court determined that the interest Margaret held was a license. *See Chicago & North Western Transp. Co. v. City of Winthrop*, 257 N.W.2d 302, 304 (Minn. 1977) (defining a license as "an interest in land in the possession of another which (a) entitles the owner of the interest to a use of the land, and (b) arises from the consent of the one whose interest in the land used is affected thereby, and (c) is not incident to an estate in the land, and (d) is not an easement" (quotation omitted)). This was error. Margaret's interest was not a license because she had the sole right to possess the real property held in the trust, and this right was neither dependent on the consent of the trustee nor revocable by the trustee.

Third, Hammerberg argues that we should reverse the commissioner's decision because it failed to satisfy the standard set forth in *Barg*. We are unpersuaded. Initially, we question whether the standard in *Barg* applies to this case. In *Barg*, the supreme court addressed whether certain property was recoverable from a surviving spouse's estate, an issue not presented here. *See* 752 N.W.2d at 56, 59 n.5 (providing that the "discussion of spouses is premised on circumstances similar to those of the Bargs. One spouse, who we refer to as the recipient spouse, applies for and receives Medicaid benefits. The other, who we refer to as the community or surviving spouse, receives no Medicaid benefits and survives the recipient spouse").

But even if we assume *Barg* applies, Margaret's interest in the real property meets the *Barg* standard. Under *Barg*,

> for an interest to be traceable to and recoverable from a surviving spouse's estate, the interest must be (1) an interest recognized by law, (2) which the Medicaid recipient held at the time of death, and (3) that resulted in a conveyance of an interest of some value to the surviving spouse that occurred as a result of the recipient's death.[5]

*Id.* at 72. Principles of real property and probate law form the basis for determining whether someone has a legal interest in property at the time of their death. *See id.* For the purposes of estate recovery, "[a]t the time of death" means "a point in time immediately before death." *In re Estate of Gullberg*, 652 N.W.2d 709, 713 n.1 (Minn. App. 2002).

---

[5] With regard to the third element, as described above, this case does not involve the conveyance of an interest to a surviving spouse. In his brief, Hammerberg's only argument with respect to the third element is that no conveyance occurred because Margaret did not hold any legally recognized interest in the real property at the time of her death. Thus, we do not separately analyze the third element.

We conclude the record shows that Margaret had a legally recognized interest in the real property held in the trust at the time of her death recognized under both real property and probate law. Based on real-property principles, Margaret possessed a qualified beneficial interest in the trust because she was entitled to use, possess, and collect any income from the property until her death. *See* Minn. Stat. § 501C.0103(m) (2022) (defining qualified beneficiary as, in relevant part, "a distributee or permissible distributee of trust income or principal"). This position granted Margaret the right to maintain suit against the trustee to, among other things, "compel the trustee to perform his duties as trustee," "enjoin the trustee from committing a breach of trust," and "compel the trustee to redress a breach of trust." *Morrison v. Doyle*, 582 N.W.2d 237, 243 (Minn. 1998) (quotation omitted). The trust instrument further provided Margaret with the power to unilaterally remove and replace the trustee.

Principles of probate law similarly indicate that Margaret possessed a legal interest in the real property at the time of her death. The trust provided Margaret with the right to determine through her will how the property would be distributed among her descendants upon her death. And under Minnesota probate law, a person can only devise by will an interest in property that they personally possess. *See In re Estate of Van Den Boom*, 590 N.W.2d 350, 353 (Minn. App. 1999) (applying this principle to probate proceedings), *rev. denied* (Minn. May 26, 1999).

For these reasons, we reverse the district court's decision on the ground that the commissioner correctly determined the real property held in the trust was subject to the liens under section 256B.15.

### III.

Finally, the parties dispute the proper disposition of this case. Hammerberg contends that, even if we conclude DHS properly recorded the liens on the real property held in the trust, we must remand to the district court because certain issues have been left unresolved. DHS asserts that reversal without a remand is appropriate because Hammerberg only challenged the validity of the liens. We agree with DHS.

Hammerberg requested, and DHS held, a fair hearing pursuant to Minn. Stat. § 256B.15, subd. 1f(c). There, the parties raised two issues: (1) whether Hammerberg timely challenged the liens and (2) whether DHS properly determined that the real property held in the trust was subject to the liens. Those issues have been resolved in this case. Thus, while questions may remain regarding the value of Margaret's interest and the collection of assets pursuant to the liens, those issues are outside the scope of this administrative appeal. *See N. Am. Water Off. v. LTV Steel Mining Co.*, 481 N.W.2d 401, 405 (Minn. App. 1992) (stating that, for agency decisions, we will not consider issues the parties raise "for the first time on appeal").[6]

---

[6] We also note that equitable claims are outside the scope of judicial review in an agency appeal. *See* Minn. Stat. § 14.69.

Therefore, we reverse the district court's decision and express no opinions on issues not properly raised before our court on appeal.[7]

**Reversed.**

---

[7] As an alternative basis for affirming the district court, Hammerberg contends that the commissioner used an unlawful procedure when it retroactively applied Minn. Stat. § 256B.15, subd. 1a(b)(5). But because neither the HSJ nor the district court considered or decided this argument, we decline to consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it.'" (quotation omitted)).