**STATE of Minnesota, Respondent,**

v.

**Richard L. OCCHINO, Appellant.**

No. C5–97–231.

Court of Appeals of Minnesota.

Dec. 9, 1997.

Review Denied Jan. 28, 1998.

William P. Dinan, City Attorney, and Cary W. Schmies, Assistant City Attorney, Duluth, Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Peter J. Nickitas, Superior, WI, for appellant.

Considered and decided by AMUNDSON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Richard L. Occhino challenges his misdemeanor convictions for trespassing and obstructing legal process, arguing that the evidence at trial was insufficient to support the jury's verdict. Occhino also challenges the district court's refusal to admit an exhibit. We affirm.

## FACTS

On October 18, 1996, at approximately 1:30 p.m., appellant Richard L. Occhino went to the Duluth police records bureau and spoke

with records employee, Diane Parker. Occhino requested a copy of his 1991 arrest report. Parker stated that 1991 reports were stored in the basement and she offered to go to the basement to get a copy of Occhino's report. Occhino declined Parker's offer, telling her not to retrieve the documents. Parker made several more offers to get the documentation, but Occhino told her not to go. Occhino finally left the records bureau office.

At 1:40 p.m. on October 18, 1996, Occhino entered the desk area of the Duluth Police Department. After asking Officer Jeanine Pauly several questions, Occhino inquired about his 1991 arrest in which he claimed he was falsely accused. When Officer Pauley asked about the status of the 1991 incident, Occhino stated that a judge found him guilty and the Minnesota Supreme Court denied his appeal. Officer Pauly informed Occhino that she could not help him since the court had already decided his case and the case was officially closed. Occhino ignored Officer Pauly's remarks and continued to persist with questions about the 1991 incident.

During the entire incident with Occhino, Officer Pauly was extremely busy with her other assigned duties including: answering nine telephone lines; responding to computer-aided dispatches (CAD) from emergency vehicles; responding to police radio emergency messages; answering 911 calls from people who do not have access to the 911 system; and monitoring fire alarms for City Hall, the St. Louis County Courthouse, the Federal Courthouse, and several local banks. While Occhino continued to occupy Officer Pauly's attention, she was unable to answer three different telephone lines that were ringing, nor could she respond to a CAD message request sent to her by a police emergency vehicle. Occhino continued to interrupt Officer Pauly as she attempted to answer telephone calls from other citizens and respond to the requests from police officers on patrol. Officer Pauly again explained that she could not help him with the closed 1991 case, and she again asked Occhino if she could assist him on any other matters. Occhino, however, did not answer her question.

Officer Pauly made it clear to Occhino that she could not help him, that she was extremely busy with other citizens who needed her immediate assistance, and that he needed to leave. Rather than leaving, Occhino became very agitated, he continued to speak in a loud voice, and he angrily paced back and forth directly in front of Officer Pauly's desk. Officer Pauly continued to tell Occhino that she was extremely busy, that his behavior was disruptive, and that he was interfering with her ability to perform her official duties.

On four separate occasions Officer Pauly told Occhino that he should leave. Occhino stated that he would not leave because he was on public property and she had no authority to make him leave. Not only did Occhino refuse to leave, but he refused to change his behavior even after repeatedly being told that his behavior was disrupting Officer Pauly and interfering with her ability to perform her official duties.

Officer Pauly attempted to escort Occhino out of the desk area. As Officer Pauly approached Occhino, she told him to leave or he would be arrested. Occhino refused to leave and began to physically resist Officer Pauly by swinging his arm and knocking her hand away. When Officer Pauly again placed her hand on Occhino, he again forcibly swung both his arms breaking her grip. The third time Officer Pauly grabbed Occhino, he intentionally pushed himself backwards, striking his body against her. During the scuffle, Officer Pauly ordered Occhino to get up against the wall, an order he ignored as he continued to physically resist. As Officer Pauly attempted to push Occhino toward the wall, he side-stepped her and hit the edge of a door. The door swung open and hit a metal filing cabinet thereby breaking the door's glass panel. Occhino's behavior caused physical injuries to Officer Pauly, who was six months pregnant at the time. Finally, two other Duluth police officers responded and assisted Officer Pauly in securing and handcuffing Occhino.

Occhino was arrested and charged with misdemeanor disorderly conduct, trespassing, and obstructing legal process. A jury found him guilty of trespassing and obstructing legal process. This appeal followed.

## ISSUES

Was the evidence sufficient to support Occhino's conviction of misdemeanor trespassing?

Was the evidence sufficient to support Occhino's conviction of misdemeanor obstructing legal process?

Did the district court abuse its discretion in denying the admittance of exhibit 6?

## ANALYSIS

■ On an appeal challenging the sufficiency of the evidence, this court's review is limited to determining whether the evidence, when viewed in the light most favorable to the verdict, was sufficient to allow the jurors to reach their verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

### I. Misdemeanor Trespassing

An individual is guilty of trespass if he intentionally enters or remains, without claim of right, on the premises of another after being told to depart by the lawful possessor. Minn.Stat. § 609.605, subd. 1(b)(3) (1996).

■ The record reveals abundant testimony affording the jury an evidentiary basis to return a guilty verdict for trespass. The jury evidently concluded that Occhino lawfully entered the police desk area, but his unruly and disruptive behavior terminated that right. Officer Pauly, who was the person in charge, rightfully and lawfully ordered him to leave. Occhino's repeated refusals to leave and his intentional act of remaining at the police desk area, while having no lawful reason to be at that area, then constituted trespass. Occhino claims that he was not disruptive and therefore, he should not have been ordered to leave. The jury, however, appears to have believed Officer Pauly and not Occhino, and the officer's testimony alone is sufficient to convict Occhino of trespass. *See State v. Bliss,* 457 N.W.2d 385, 390 (Minn.1990) (convictions may rest upon testimony of single credible witness). Further-

more, it is the jury's role to determine the credibility and weight given a witness's testimony. *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985).

■ The supreme court has held that an individual participating in a hostile demonstration was guilty of trespass when refusing to obey a police officer's order to leave the premises. *State v. Quinnell,* 277 Minn. 63, 151 N.W.2d 598 (1967).[1] A disruptive and hostile individual has no legal right to remain on the premises after being ordered to leave by a police officer. *Id.* 277 Minn. at 70, 151 N.W.2d at 604. Further, Officer Pauly was working on behalf of the police communication center where she handles 911 related emergency situations and all non–911 urgent calls. Any disruptions in the police desk area could have life-threatening implications for fellow officers and citizens.

■ Occhino claims he had a right to remain in the desk area because it was public property. This question is presently unsettled by Minnesota law. The state, however, cites a persuasive case from the District of Columbia. *See Hemmati v. United States,* 564 A.2d 739 (D.C.App.1989) (First Amendment does not guarantee personal access to public officials). In *Hemmati,* an Iranian citizen had no right to remain in a Senator's office after being told to leave by the agent of the person lawfully in charge. The court held that there must be a limit to individual argument of such matters if the government is to continue. *Id.* at 742. Once an individual is ordered to leave, that person must depart and has no legal right to remain because the premise is public property. As the United States Supreme Court has stated, "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Greenburgh Civic Ass'ns.,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). It is axiomatic that mere public ownership of property does not permit access. Defense installations, taxing authority offices, and scores of other publicly owned facilities are routinely off-limits for citizens without prior arrangement.

---

1. We note that *Quinnell* involved trespass on     private property.

Even other facilities, such as parks, may provide for a conditional entry requiring the payment of a fee, for example.

■ Occhino also claims that the jury needed to find that he acted with criminal intent to be found guilty of trespassing. Occhino cites a case stating that a bona fide belief, i.e., a good faith claim of right, negatives the criminal intent required by Minn. Stat. § 609.605(5) (1980). *State v. Hoyt*, 304 N.W.2d 884, 890 (Minn.1981). *Hoyt* quoted a secondary source to explain:

> "Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent, and if the act prohibited is committed in good faith under claim of right or color of title, although the accused is mistaken as to his right, unless it is committed with force or violence or a breach of the peace, no conviction will lie, since it will not be presumed that the legislature intended to punish criminal acts committed in ignorance, by accident or under claim of right, and in the bona fide belief that the land is the property of the trespasser, unless the terms of the statute forbid any other construction."

*Id.* at 890–91, quoting 75 Am.Jur.2d *Trespass* § 87 (1974). *Hoyt* addressed trespassing by a person who "enters the premises of another with intent to take or injure any fruit, fruit trees, or vegetables growing on the premises, without permission of the owner or occupant." Minn.Stat. § 609.605, subd. 1(b)(5) (1980). Although hardly applicable here, Occhino claims that the district court's jury instructions required the jury to find an intentional trespass to find him guilty of trespassing. This assertion goes against the general definition of trespassing. More to the point, even dicta in the *Hoyt* case does not excuse that trespass committed with "force or violence or a breach of the peace," as was evident here.

Occhino argues several additional points, each without merit. He claims he had a right to remain at the police desk because of his rights under the Data Practices Act, but fails to explicate precisely how his rights were not requited. Additionally, he argues that he was at the desk to file a complaint. This is an important assertion because if Occhino was at the police records desk to file a new complaint, then his presence would presumably be legal, and absent unruly behavior, he would not be involved in misdemeanor trespass. This assertion, however, is flawed because the record does not support this claim.

Based on the standard of review, this court must assume that the jury believed Officer Pauly and the government's other witnesses and that the jury did not believe Occhino. The evidence provided is sufficient to support the conviction for misdemeanor trespassing.

## II. Misdemeanor Obstructing Legal Process

It is a crime for an individual to intentionally obstruct, resist, or interfere with a police officer while that officer is performing official duties. Minn.Stat. § 609.50, subd. 1(2) (1996). The supreme court has upheld the use of the obstruction of legal process statute for both physical and verbal acts. *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn.1988) (holding that the obstruction statute may be used when a defendant uses words that by themselves have the effect of physically obstructing or interfering with a police officer in the performance of his or her official duties). In *Krawsky*, the court held that the obstruction statute could be used in a case where someone running alongside a police officer, repeatedly shouting and cursing the officer, while the officer is pursuing a felon, may be guilty of obstruction if such conduct interferes with the officer's duties.

The government asserts that Occhino's loud and repetitive interruptions rose to the *Krawsky* level because his repeated deliberate acts directly interfered with Officer Pauly's ability to perform her official duties. Based on the record, it is clear that Occhino intentionally ignored Officer Pauly's legitimate request to stop interrupting her; instead, he continued his loud and repetitive interruptions knowing that it was disruptive to her and inimical to her public duties.

■ The jury reasonably concluded Occhino's intentional repeated verbal interruptions exceeded ordinary verbal criticism of the police and rose to the unlawful level in which

his words had the effect of physically interfering with Officer Pauly's performance of her official duties. Occhino's complaints were also ill-placed and not addressed to the proper officer. We are again mindful that this was no new complaint, but a revisit of a case long since closed. Additionally, Occhino's intentional physical resistance to Officer Pauly, resulting in injuries to her, also constituted obstruction of legal process.

Officer Pauly had the right, and the duty, to escort Occhino from the police desk area under the circumstances. It was Occhino who turned the escort into an arm-swinging, body-pushing incident. These physical acts of intentional resistance of a lawful police order by Occhino are sufficient to constitute obstruction of legal process.

Occhino claims that Officer Pauly overreacted. This claim, however, is also without support in the record. Officer Pauly acted in a professional and appropriate manner. She demonstrated patience and restraint toward this citizen who was particularly troublesome. Officer Pauly's conduct toward Occhino was not the kind of arbitrary or selective enforcement we should fear from peace officers. In fact, she repeatedly warned Occhino that his behavior was disruptive and interfered with her ability to perform her assigned official duties.

### III. Trial Exhibit

Rulings on evidentiary matters generally rest within the sound discretion of the district court. *Caldwell v. State*, 347 N.W.2d 824, 826 (Minn.App.1984). If a defendant claims that the district court erred in admitting evidence, the defendant has the burden of showing both the error and the prejudice resulting from the error. *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981). "A reversal is warranted only when the error substantially influences the jury to convict." *Id.*

The exhibit in question is a written transcript of a telephone conversation between an investigator employed by Occhino and a police officer who was not involved in the arrest incident. The district court ruled that the exhibit was not relevant. Occhino does not advance any reason why he believes the district court erred, nor does he address any possible prejudice resulting from the alleged error. Since Occhino fails to show any substantial jury influence, he has failed to meet his burden of proving prejudice. Based on the record, the district court did not abuse its discretion by denying the admittance of the exhibit.

### DECISION

The record clearly provides sufficient evidence to support appellant Richard L. Occhino's convictions for misdemeanor trespassing and misdemeanor obstruction of legal process. Additionally, the district court did not abuse its discretion by refusing to admit the exhibit.

**Affirmed.**