STATE of Minnesota, Respondent,

v.

Kevin TOMLIN, Appellant.

No. C0–99–920.

Court of Appeals of Minnesota.

April 25, 2000.

Review Granted June 27, 2000.

---

Mike Hatch, Attorney General, St. Paul, MN; and Shawn B. Reed, Maki & Over- om, Chtd., Duluth, MN (for respondent).

Kevin J. Short, Minneapolis, MN (for appellant).

Considered and decided by WILLIS, Presiding Judge, KALITOWSKI, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant Kevin Tomlin appeals from his conviction of obstructing legal process pursuant to Minn.Stat. § 609.50, subd. 1(1) (1996). He argues that the misleading statements he made to the police following a hit-and-run accident involving his friends were not sufficient to support his conviction under the statute. He also argues that the trial court's jury instruction on obstructing legal process materially misstated the law and that the trial court erred in denying his pretrial motion to dismiss for lack of probable cause. Because Tomlin's lies and misleading statements to the police did not result in a physical obstruction of the officer's acci-

dent investigation, we conclude they were insufficient as a matter of law to support his conviction under Minn.Stat. § 609.50, subd. 1(1). We, therefore, reverse.

## FACTS

On the evening of December 27, 1997, Kevin Tomlin, an off-duty Duluth police officer, and his brother-in-law, James Grussendorf, spent several hours in the Beacon Sports Bar. They were joined by a friend, Scott Soderholm, at approximately 10:00 p.m. Anticipating that he would be drinking some alcoholic beverages, Tomlin prearranged for his wife to pick him up later in the evening. She arrived between 11:00 and 11:30 p.m.

At approximately 1:30 a.m., they all left the bar. The men had consumed 10–12 beers each. Tomlin's wife had 1 or 2 mixed drinks. Tomlin rode with his wife and Grussendorf and Soderholm followed in their own vehicles. As they were driving west on Hermantown Road, Grussendorf crossed the centerline and sped up in an attempt to pass the Tomlins. In so doing, Grussendorf belatedly saw a pedestrian, Lee Kalfsbeek, walking his dog along the road. He swerved back into the westbound lane in front of the Tomlins and then slid into the ditch.

Soderholm, originally traveling third in the line of vehicles, also sped up to pass the Tomlins. Unable to avoid Kalfsbeek and his dog, Soderholm struck them, killing the dog and seriously injuring Kalfsbeek.

A factual dispute exists as to what happened during the next few minutes. Tomlin testified that he ran to the nearest house, which turned out to be Kalfsbeek's, and asked the victim's daughter to call 911. When Tomlin returned to the scene of the accident, Grussendorf and Tomlin's wife had already left. Tomlin tried to administer first aid to Kalfsbeek until emergency medical personnel and police arrived. Soderholm then left the scene before anyone else arrived.

According to Kalfsbeek, he overheard Tomlin and Soderholm having an argumentative conversation. Soderholm testified that Tomlin said, "Get the hell out of here," or "Leave, I'll take care of it."

Tomlin spoke with three police officers that night: Officer Kent Gaidis, Officer Michael Anderson, and Corporal William Ulvi. When questioned by Officer Gaidis, Tomlin misrepresented the color of Soderholm's truck and led the officer to believe that no other vehicles were involved. Tomlin claimed not to be able to tell the officer which direction on Highway 2 the vehicle had turned, despite the fact that the intersection was within view of the accident scene.

When Officer Anderson spoke with Tomlin, he asked him for the names of the other drivers, but he could not provide them. Tomlin also inaccurately described the suspect vehicle to Officer Anderson. Tomlin informed Officer Anderson that he had seen the driver of that vehicle. He described the driver (Soderholm) as being in his "pre–30s," "clothing unknown." Tomlin described the Grussendorf pickup as being "a truck." Tomlin also provided Officer Anderson with a handwritten statement containing this information.

Tomlin later spoke with Corporal Ulvi. In response to questioning, Tomlin informed Corporal Ulvi that his wife and he had been at the Beacon Sports Bar. When asked if they had left the Beacon Sports Bar with anyone, Tomlin told Corporal Ulvi, "No." Corporal Ulvi also asked Tomlin to describe the hit-and-run vehicle. Tomlin described the vehicle as being a "Ford or a Chevrolet" pickup. Tomlin was unable to provide Corporal Ulvi with any license plate numbers. Tomlin stated that he had seen the hit-and-run driver, but did not recognize him. When asked if he thought he would be able to identify the driver if he saw him again, Tomlin told Corporal Ulvi that he thought he would. Tomlin also used a police-department cellular phone to make five calls to the Grussendorf residence, where all the drivers were located, approximately one mile from the accident scene.

Tomlin later admitted that after his wife and friends had left the scene, he made a conscious decision not to volunteer the names of his friends to the officers who arrived that night. Approximately 36 hours after the accident, Tomlin voluntarily gave Hermantown police officers a second written statement which detailed the events of the accident and identified the drivers. Soon after, Grussendorf and Soderholm admitted their roles in the accident. But due to the passage of time, all blood alcohol evidence was lost.

Tomlin was arraigned for misdemeanor obstruction of legal process in violation of Minn.Stat. § 609.50, subd. 1(1) (1996). Prior to trial, Tomlin submitted a motion to dismiss for lack of probable cause, but it was denied by the trial court.

On April 6, 1999, a jury found Tomlin guilty of obstruction of legal process. Tomlin subsequently filed this appeal.

## ISSUES

1. Was there sufficient evidence to sustain the verdict under the obstruction-of-legal-process statute, Minn.Stat. § 609.50, subd. 1(1) (1996), in light of *State v. Krawsky* and its progeny?

2. Did the trial court err in denying Tomlin's pretrial motion to dismiss for lack of probable cause?

3. Did the trial court's instruction to the jury on obstruction of legal process misstate the law?

## ANALYSIS

Tomlin contends that the evidence was not sufficient to support the verdict under a "correct application" of the obstruction-of-legal-process statute, Minn.Stat. § 609.50, subd. 1(1) (1996). He argues that his misleading statements to the police do not reach the level of physical interference with the police that is re-

quired by the cases interpreting the statute.

■ Although framed in terms of sufficiency of the evidence, Tomlin's argument necessarily requires an interpretation of the obstruction-of-legal-process statute. Statutory interpretation is a question of law which this court reviews de novo. *State v. Coauette,* 601 N.W.2d 443, 445 (Minn.App.1999), *review denied* (Minn. Dec. 14, 1999).

Minn.Stat. § 609.50, subd. 1(1), states in relevant part.

> Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:
>
> (1) obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense.

*Id.* The Minnesota Supreme Court thoroughly reviewed this statute in *State v. Krawsky,* 426 N.W.2d 875 (Minn.1988).[1] In that case, the appellant argued that the statute was unconstitutionally overbroad. *Id.* at 876. The *Krawsky* court rejected the overbreadth challenge, but construed the statute very narrowly. It held: (1) the statute required the state to prove that the defendant acted intentionally, (2) the statute was "directed solely at physical acts," and (3) the statute was directed at a particular kind of physical act — physically obstructing or interfering with an officer. *Id.* at 877. The court stated further, "the statute forbids intentional physical obstruction or interference with a police officer in the performance of his official duties." *Id.* The court also indicated that the statute applied to a limited amount of verbal conduct.

> The statute may be used to punish "fighting words" or any other words that by themselves have the effect of physi-

cally obstructing or interfering with a police officer in the performance of his duties — e.g., the statute may be used to punish a person who runs beside an officer pursing a felon in a public street shouting and cursing at the officer if the shouting and cursing physically obstructs the officer's pursuit and if the person intends by his conduct to obstruct or interfere with the officer.

*Id.*

More recently, in *State v. Occhino,* 572 N.W.2d 316 (Minn.App.1997), *review denied* (Minn. Jan. 28, 1998), we upheld the use of the obstruction-of-legal-process statute in a case involving verbal acts. In *Occhino,* the defendant repeatedly interrupted a police officer who was answering multiple telephone lines and responding to radio emergency messages. *Id.* at 318. In upholding the jury's verdict, this court stated Occhino's words had the "effect of physically interfering with [the officer's] performance of her official duties." *Id.* at 321.

In *State v. Patch,* 594 N.W.2d 537 (Minn.App.1999), this court considered another aspect of the obstructing-legal-process statute. There, the defendant informed an individual for whom the police had an outstanding arrest warrant that officers were coming to arrest her. *Id.* at 537. The defendant then assisted the individual's flight by keeping a lookout for the officers and by offering the individual a ride, which was declined. *Id.* at 538. On appeal, this court overturned the jury verdict, concluding that, as a matter of law, a person does not commit obstruction of legal process by verbal conduct that is not *directed* at police officers and that does not have the effect of physically obstructing or interfering with the officers' execution of legal process. *Id.* at 539–40.

---

1. The obstructing-legal-process statute was amended in 1989, a year after *Krawsky* was released. 1989 Minn. Laws ch. 5, § 4. This amendment reorganized the statute into two subdivisions and separated by subclauses different ways of committing the offense. *Id.* But the language defining the prohibited conduct, "obstructs, hinders or prevents," is the same in the current statute as it was in the statute construed in *Krawsky*.

In the instant case, Tomlin's statements were directed at the officers, and there is sufficient evidence from which the jury could conclude that he intended to hinder the officers' investigation. At trial, Tomlin testified that he made a conscious decision not to volunteer any information. He also stated he was looking out for his friends and he did not want them to get in trouble.

But in light of the narrow interpretation of the statute provided by *Krawsky* and its progeny, the issue of whether Tomlin's misleading representations *physically* obstructed the officers presents a close case. As Tomlin points out, he was not legally obligated to answer the officers' questions or to assist them. In contrast to 18 U.S.C. § 1001 (1994), which makes it a crime to "knowingly and willingly" make a false statement in any matter within the jurisdiction of a federal department or agency, there is no Minnesota state-law equivalent.

Moreover, after a careful review of the record, we find no evidence that Tomlin's lies and misrepresentations to the officers physically obstructed their investigation. Unlike the situation in *Occhino* or the "fighting words" example in *Krawsky*, where the officers were physically prevented from performing their duties, Tomlin's words did not *physically* interfere with the officers' ability to complete their investigation of the accident. The officers were able to examine the forensic evidence at the scene and to interview the bartender and Kalfsbeek's family members. They were also able to search the nearby roads for the suspect vehicle. Thus, although we in no way condone Tomlin's conduct and find it reprehensible, we are constrained to conclude it does not fall within the parameters of Minn.Stat. § 609.50, subd. 1(1), as interpreted by *Krawsky* and it progeny. *See also State v. Corbin*, 343 N.W.2d 874, 875–76 (Minn.App.1984) (stating that "penal statutes must be construed strictly; any reasonable doubt must be interpreted in favor of the defendant"). Our resolution of this issue also makes it unnecessary to reach the jury instruction or probable cause issues presented by Tomlin. *See State v. Holmberg*, 527 N.W.2d 100, 103 (Minn.App.1995) (stating claim of failure to dismiss for lack of probable cause is irrelevant where defendant has been convicted because standard for sufficiency of evidence to support conviction is much higher than probable cause), *review denied* (Minn. Mar. 21, 1995).

## D E C I S I O N

Tomlin's lies and misleading statements to police following the hit-and-run accident involving his friends were insufficient as a matter of law to support the conviction under Minn.Stat. § 609.50, subd. 1(1) (1996), because they did not result in a physical obstruction of the police officers' accident investigation.

**Reversed.**