STATE of Minnesota, Petitioner,
Appellant,

v.

Kevin TOMLIN, Respondent.

No. CO–99–920.

Supreme Court of Minnesota.

Feb. 22, 2001.

Mike Hatch, Atty. Gen., St. Paul, Shawn B. Reed, Hermantown Pros. Atty., Maki & Overom, Chtd., Duluth, for appellant.

Kevin J. Short, Minneapolis, for respondent.

## OPINION

GILBERT, Justice.

Kevin Lee Tomlin, a city of Duluth police officer, was convicted of obstruction of

legal process under Minn.Stat. § 609.50, subd. 1(2) (1996).[1] Tomlin lied to police to cover up for his friends who were involved in a hit-and-run accident. Tomlin was charged with and a jury found him guilty of obstruction of legal process in violation of Minn.Stat. § 609.50, subd. 1. The court of appeals reversed the conviction holding that Tomlin's actions did not physically obstruct the officers as required by *State v. Krawsky*, 426 N.W.2d 875 (Minn.1988) and, therefore, there was not sufficient evidence for a conviction. *State v. Tomlin*, 609 N.W.2d 282, 286 (Minn.App.2000). The court of appeals did not rule on the issues of the district court's refusal to grant Tomlin's motion to dismiss or the district court's jury instructions regarding obstruction of legal process and whether or not they were proper. The state of Minnesota now appeals from the court of appeals' reversal of Tomlin's conviction. We affirm.

On the night of December 27, 1997, Kevin Tomlin was out drinking with his brother-in-law, Jim Grussendorf, and their friend Scott Soderholm. At around 11:30 p.m. Tomlin's wife Rhonda met Tomlin at the bar to drive him home. All four of them left the bar at around 1:30 a.m. Kevin Tomlin, Grussendorf and Soderholm were all intoxicated. Grussendorf and Soderholm, each in his own pick-up truck, followed Rhonda Tomlin. As they were driving, Grussendorf began to pass the Tomlin vehicle. He saw a pedestrian in the road and had to swerve back in front of the Tomlin vehicle, causing Rhonda to hit her brakes. Grussendorf went into the ditch, hitting a mailbox and telephone repair box before returning to the road. Soderholm also tried to pass the Tomlin vehicle. When he saw the pedestrian he was unable to take any evasive action and struck the pedestrian, Lee Kalfsbeek, and his dog Buddy. Mr. Kalfsbeek's legs were broken in 38 places and his dog was killed. The Tomlin vehicle stopped and Kevin Tomlin ran to a nearby house, which turned out to be the Kalfsbeek residence. Soderholm stayed with the victim. Tomlin identified himself as a police officer, told Mrs. Kalfsbeek and her daughter to call 911 because a pedestrian had been hit, and told them both to stay inside.

When Tomlin returned to the accident scene, his wife Rhonda, Grussendorf and their respective vehicles were no longer there. Soderholm was in the ditch next to the victim. Tomlin told Soderholm something like "Get the hell out of here. I'll take care of it." Soderholm left the scene of the accident before the police arrived.

When the police arrived, an officer asked Tomlin what had happened. Tomlin described the accident but did not mention any names, nor did he mention a second vehicle going into the ditch. He described the truck that hit Kalfsbeek as a "possible blue Ford pick-up." Soderholm's truck was a green Ford.

When a second officer interviewed Tomlin, Tomlin mentioned that two vehicles were involved. He said that the truck that hit Kalfsbeek was a blue pre-'90s Ford, possibly a four-by-four, that was possibly high up. He said that the driver was in his pre–30s but he could not describe the driver's clothing. Tomlin admitted at trial that he made the conscious decision not to volunteer the identity of the drivers. Tomlin provided the officer with a written statement that indicated that he had told his wife Rhonda to call 911 from the house of her brother, Grussendorf, who was babysitting that night. Grussendorf's roommate was in fact babysitting that night, not Grussendorf. Tomlin said he did not know

---

1. The initial complaint issued by the police simply charged Tomlin with violating § 609.50. The formal complaint and summons later filed by the city attorney alleged that Tomlin violated § 609.50, subd. 1(2). The court of appeals ruled on § 609.50, subd. 1(1). This discrepancy does not affect our analysis because the *Krawsky* decision, on which this case turns, applies to both provisions. In 1988, the year in which *Krawsky* was decided, the statute was not divided into sub-parts as it was in 1997. However, the language of the relevant provisions was substantively the same.

Grussendorf's address and he did not know which way the truck turned onto Highway 2, even though the intersection was visible from where they were. Tomlin also borrowed a cellular phone from the first officer and made five calls to Grussendorf's residence where Grussendorf, Soderholm and Rhonda Tomlin all were.

When speaking to a third officer, Tomlin said that he did not know the driver of the truck that hit Kalfsbeek but he might be able to identify the driver if he saw him later. He identified the truck as a Ford or Chevrolet pick-up. He also said that no one else was at the bar with him and Rhonda, nor did anyone leave with them.

On the evening of December 28, the police learned from a bartender that Soderholm and Grussendorf were at the bar with the Tomlins when the bar closed. On the afternoon of December 29, at the request of the police, Tomlin went to the police station to go over his written statement again. At the beginning of the interview, the investigating officer indicated that he did not believe that Tomlin had been entirely truthful. Tomlin said that he would give a new statement and this time he would tell the truth. Tomlin then gave his version of the story, filling in the details he had left out or lied about. Grussendorf and Soderholm were apprehended shortly thereafter. Because they were not arrested until 36 hours after the accident, all blood alcohol evidence was lost.

■ First, we review the issue of whether there was sufficient evidence to convict Tomlin of obstruction of legal process. When faced with a sufficiency of the evidence claim, we must look at the record and determine whether the evidence "when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). In this case, it is necessary to first determine what evidence is required for a conviction of obstruction of legal process. This is an issue of statutory interpretation, a matter of law that we review de novo.

*Baker v. State,* 590 N.W.2d 636, 638 (Minn. 1999).

The statutory provision that Tomlin was charged under states that whoever intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties" may be sentenced as provided in subdivision 2 of the statute. Minn.Stat. § 609.50, subd. 1(2). We construed this language in *State v. Krawsky* and held that section 609.50 was not facially overbroad or vague. 426 N.W.2d at 879. In that case, we compared Minn.Stat. § 609.50 to a city of Houston obstruction of justice ordinance that the United States Supreme Court struck down for being overbroad in *City of Houston, Tex. v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). *Krawsky,* 426 N.W.2d at 877–78.

In distinguishing Minn.Stat. § 609.50 from the ordinance that was struck down in *City of Houston,* we stated that the Minnesota statute was directed solely at a particular kind of physical act that physically obstructs or interferes with an officer, whereas the Houston ordinance prohibited merely "interrupting" an officer. *Krawsky,* 426 N.W.2d at 877. We described physically obstructing or interfering as conduct that "involves * * * substantially frustrating or hindering the officer in the performance of his duties." *Id.*

■ Although we narrowly construed Minn.Stat. § 609.50 to apply to physical acts, we acknowledged that in limited circumstances it might be possible for words such as "fighting words" to have the effect of physically obstructing or interfering with an officer. *Id.* Therefore, in order for Tomlin's conduct to fall under Minn.Stat. § 609.50, subd. (1) or (2), it must rise to the level of a physical obstruction or be words, such as fighting words, that have the effect of physically obstructing or interfering with an officer conducting an investigation.

 Many of Tomlin's statements were lies and may have interrupted the officers' activities during their investigation. However, we cannot find any instance in the record where Tomlin's lies and omissions physically obstructed the officers. Not revealing Grussendorf and Soderholm's names delayed the police in becoming aware of their involvement in the accident. Tomlin lied to the investigating officers when he stated that he did not know the driver of the truck, that he did not leave the bar with anyone else and that Grussendorf was babysitting. Because police were not able to apprehend Grussendorf and Soderholm right away, they were not able to obtain blood-alcohol evidence. All of these false statements may have lengthened the time in which it took the police to apprehend Soderholm and Grussendorf, but these statements did not physically prevent or obstruct the police from trying to obtain the evidence.

Tomlin also allegedly told the Kalfsbeeks to stay inside, preventing them from seeing Soderholm, and he told Soderholm something to the effect of "Get the hell out of here." Both of these statements were made to third parties, not the police. These statements that Tomlin made outside of police presence did not physically obstruct or interfere with any of the officers.

Looking at the facts in a light most favorable to the conviction, Tomlin also lied about the color of the truck that hit Kalfsbeek. This may have led the police to search for the wrong color vehicle. However, at the time Tomlin made the statement, police were not in pursuit of a particular suspect. Furthermore, there is not any evidence that the statement caused the police to alter their course of conduct during the investigation. The police may have broadcast the wrong data when telling other officers what to look for, but this does not equal a physical obstruction or interference. The statement did not prevent the police from pursuing a suspect in a green truck rather than a blue truck.

While it is true that Tomlin lied to police, *Krawsky* requires that in order for a violation of Minn.Stat. § 609.50, subd. 1(1) or (2) to exist, there must be a finding that the accused physically obstructed or interfered with a police officer while that officer was engaged in the performance of his official duties. Although *Krawsky* mentions in dicta that some verbal conduct such as "fighting words" may rise to the level of physical conduct, we do not believe Tomlin's conduct rises to that level. We hold that none of Tomlin's conduct physically obstructed the police while engaged in the performance of their duties. Therefore, there was not sufficient evidence for a conviction under Minn.Stat. § 609.50, subd. 1(1) or (2). We affirm the court of appeals' decision to reverse Tomlin's conviction.

Because we affirm the court of appeals' decision regarding insufficiency of the evidence, it is not necessary for us to reach the issues of the district court's denial of Tomlin's motion to dismiss or the district court's jury instructions, and we decline to do so at this time.

Affirmed.