*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0311**

State of Minnesota,
Respondent,

vs.

Paula Jean Yackel,
Appellant.

**Filed February 22, 2016
Affirmed in part and reversed in part
Johnson, Judge**

Anoka County District Court
File No. 02-CR-14-220

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kurt B. Glaser, Lexington City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Connolly, Judge; and Klaphake, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

An Anoka County jury found Paula Jean Yackel guilty of DWI and obstructing legal process. On appeal, Yackel argues that the state's evidence is insufficient to support each conviction. We conclude that the state's evidence is sufficient to prove beyond a reasonable doubt that Yackel committed the offense of DWI. But we conclude that the state's evidence is insufficient to prove beyond a reasonable doubt that Yackel committed the offense of obstructing legal process. Therefore, we affirm in part and reverse in part.

**FACTS**

On January 10, 2014, at 1:46 a.m., Centennial Lakes Police Officer Matthew Langreck received a report that an intoxicated woman was in the driver's seat of a white vehicle and was about to drive away from Cowboy's Saloon. Officer Langreck found a white vehicle in the Cowboy's Saloon parking lot. He observed a woman, later identified as Yackel, sitting in the driver's seat of the vehicle, reaching her arm around the door and attempting to use a key to unlock the door to silence the car alarm. A man, D.L.S., was standing by the passenger side of the vehicle, waiting to be let inside.

Officer Langreck approached the vehicle and spoke with Yackel through the window as she sat in the driver's seat. As he did so, he noticed that she was disheveled and appeared to have been crying. He also noticed that her eyes were bloodshot and watery and that her speech was slurred. He smelled "an overwhelming odor of alcohol coming from her." When Officer Langreck asked Yackel for identification, she became argumentative, interrupted him, and repeatedly told him to leave her alone. Yackel became

2

frustrated because she could not find her license in her purse and dumped the contents of the purse into the snow on the ground.

While Yackel searched for her driver's license in the snow, Officer Langreck spoke with D.L.S., who also appeared to be intoxicated. D.L.S. told Officer Langreck that Yackel was going to drive him home. While speaking to D.L.S., Yackel continued to interrupt Officer Langreck and told him to leave D.L.S. alone. Yackel stepped out of the vehicle, flailed her arms, pointed at Officer Langreck, and told him to arrest her. Officer Langreck ordered Yackel to get back in the vehicle. Yackel continued to argue with Officer Langreck and did not get back in the vehicle, despite several commands to do so. Officer Langreck arrested Yackel because "she clearly was not obeying lawful orders" and was "obstructing the investigation" of a possible DWI. Officer Langreck handcuffed Yackel, walked her to the front of her vehicle, and placed her on the ground.

Meanwhile, D.L.S. had become more agitated. He yelled at and walked toward Officer Langreck, ignoring his commands to back away. Shortly thereafter, Officer Jeffrey Tarnowski arrived on the scene. While Officer Langreck was interacting with D.L.S., Officer Tarnowski placed Yackel in his squad car. As he escorted Yackel to his squad car, Officer Tarnowski noticed that Yackel smelled heavily of alcohol, had slurred speech, and was unsteady on her feet. Officer Tarnowski picked up the contents of Yackel's purse, which were scattered on the ground.

Neither Officer Langreck nor Officer Tarnowski administered field sobriety tests or a preliminary breath test, and neither officer read Yackel the implied-consent advisory. Officer Langreck testified that he did not administer field sobriety tests because he believed

3

that Yackel would have difficulty standing on her own due to her level of intoxication and believed that she would not be cooperative. Officer Tarnowski testified that he did not perform any investigation into Yackel's degree of intoxication because Officer Langreck did not ask him to do so.

Before releasing Yackel, Officer Langreck cited her for obstructing legal process, in violation of Minn. Stat. § 609.50, subd. 1(2) (2012). Approximately seven months later, the state filed an amended complaint, which charged Yackel with three additional offenses: disorderly conduct, in violation of Minn. Stat. § 609.72, subd. 1(3) (2012); fourth-degree DWI for being in control of a motor vehicle while impaired, in violation of Minn. Stat. §§ 169A.20, subd. 1(1), .27, subd. 1 (2012); and public nuisance, in violation of Minn. Stat. § 609.74, subd. 1 (2012). The state also charged D.L.S. with obstructing legal process. Before trial, the district court dismissed the charges of disorderly conduct and public nuisance on Yackel's motion to dismiss.

Yackel and D.L.S. were tried together in December 2014. The state called three witnesses: Officer Langreck, Officer Tarnowski, and a patron of Cowboy's Saloon. The patron testified that he saw Yackel and D.L.S. inside the bar, speaking loudly, pounding on the bar, and "making a scene." He testified that Yackel and D.L.S. were at the bar for a short period of time and that each had one drink. When the patron exited the bar, he saw Yackel speaking to a police officer from inside her vehicle. He heard Yackel repeatedly tell the officer to leave her alone and go back to his car, and he testified that Yackel was "agitated." Based on Yackel's behavior, the patron believed that Yackel was drunk to such an extent that she could not drive safely. Yackel called one witness: a manager of

4

Cowboy's Saloon, who testified that Yackel and D.L.S. were served one drink each. When asked if he observed any signs of intoxication, he said, "Not very dramatic, no." Yackel did not testify.

The jury found Yackel guilty of both DWI and obstructing legal process. The district court imposed concurrent sentences of 90 days in jail and ordered a $100 fine but stayed the sentences and placed Yackel on probation for one year. Yackel appeals.

## D E C I S I O N

Yackel argues that the state's evidence is insufficient to support her convictions of DWI and obstructing legal process.[1]

In reviewing the sufficiency of the evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We seek to "determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Salyers*, 858 N.W.2d 156, 160 (Minn. 2015) (quotations

---

[1]As a preliminary responsive argument, the state argues that Yackel's appeal should be dismissed on the ground that she did not file her brief on a timely basis. The state cites Minn. R. Civ. App. P. 131.01, subd. 1, which requires an appellant to file a brief within 30 days after delivery of the necessary transcripts. But in an appeal from a criminal conviction, Minn. R. Crim. P. 28.02, subd. 10, requires an appellant to file a brief within 60 days after delivery of the necessary transcripts. Yackel timely filed her brief within the 60-day time period. Thus, it is unnecessary to consider whether the appeal should be dismissed. *See Boom v. Boom*, 361 N.W.2d 34 (Minn. 1985); *State v. Bjornson*, 378 N.W.2d 4, 8 (Minn. App. 1985), *review denied* (Minn. Jan. 17, 1986).

omitted). We "assume that the factfinder disbelieved any testimony conflicting with [the] verdict." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

## A.    Driving While Impaired

Yackel argues that the state's evidence is insufficient to support her DWI conviction because the evidence does not establish beyond a reasonable doubt that she was impaired.

To establish that Yackel is guilty of DWI, the state was required to prove beyond a reasonable doubt that Yackel drove, operated, or was in physical control of a motor vehicle while impaired. Minn. Stat. § 169A.20, subd. 1(1). A person is impaired if the person "had drunk enough alcohol so that the [person's] ability or capacity to drive was impaired in some way or to some degree" and, as a result, "does not possess that clearness of intellect and control . . . that [the person] otherwise would have." *State v. Ards,* 816 N.W.2d 679, 686 (Minn. App. 2012) (quotations omitted).

In this case, multiple witnesses testified that Yackel appeared to be intoxicated, which allowed the jury to find that she was impaired for purposes of the DWI statute. The Cowboy's Saloon patron testified that Yackel consumed an alcoholic drink in a short period of time. Both Officer Langreck and Officer Tarnowski testified that Yackel's speech was slurred, that she was unsteady on her feet, and that she smelled of alcohol. Officer Langreck also testified that Yackel's eyes were bloodshot and watery. More specifically,

6

both officers testified that they believed that Yackel was intoxicated. The Cowboy Saloon patron also testified that he concluded that Yackel was drunk. The caselaw recognizes that evidence of this type is capable of proving impairment for purposes of the DWI statute. *See State v. Shepard*, 481 N.W.2d 560, 563 (Minn. 1992); *State v. Teske*, 390 N.W.2d 388, 390-91 (Minn. App. 1985). "We must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted). Thus, the testimony of the state's witnesses concerning Yackel's appearance and behavior is capable of proving that she was impaired by alcohol.

Yackel contends that the evidence described above is merely circumstantial evidence of impairment and that this court should apply the more demanding standard of review for circumstantial evidence. The standard of review for circumstantial evidence requires an appellate court, first, to "identify the circumstances proved" and, second, to "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved" and "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations omitted). To determine whether to apply the ordinary standard of review or the circumstantial-evidence standard of review, we ask whether the state's direct evidence, by itself, is sufficient to prove each element of the charged offense. *See State v. Flowers*, 788 N.W.2d 120, 133 n.2 (Minn. 2010). If so, we apply the ordinary standard of review; but if the state's direct evidence, by itself, is insufficient to prove each element of the charged offense, and the state also relies on circumstantial evidence to prove one or more elements, we apply the circumstantial-

7

evidence standard of review. *See State v. Porte*, 832 N.W.2d 303, 309-10 (Minn. App. 2013) (applying circumstantial-evidence standard of review because state introduced insufficient direct evidence); *see also Salyers*, 858 N.W.2d at 160-61 (applying ordinary standard of review because state introduced sufficient direct evidence); *State v. Sam*, 859 N.W.2d 825, 832-33 (Minn. App. 2015) (applying circumstantial-evidence standard of review because state did not introduce direct evidence). Direct evidence is "'evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption'"; circumstantial evidence is "'evidence based on inference and not on personal knowledge or observation.'" *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (alterations omitted) (quoting *Black's Law Dictionary* 595-96 (8th ed. 2004)).

Contrary to Yackel's contention, the state introduced direct evidence that, by itself, is sufficient to prove that she was impaired. This court has held that eyewitness testimony concerning a driver's appearance and behavior is direct evidence, not circumstantial evidence, of the driver's impairment. *State v. Stokes*, 354 N.W.2d 53, 56 (Minn. App. 1984). The state called three witnesses who described Yackel's appearance and behavior in ways that would allow a juror to infer that she was intoxicated. In addition, the state's witnesses actually testified that they believed that she was drunk. This testimony is direct evidence of Yackel's impairment, and it is sufficient to establish her guilt.

Yackel also contends that this court should reverse her conviction for the same reasons that led to reversal in *State v. Elmourabit*, 373 N.W.2d 290 (Minn. 1985). In that case, the supreme court concluded that the evidence of impairment was insufficient because

8

the defendant admitted to drinking only "one beer and a few sips of another" at a restaurant and introduced evidence that his erratic behavior was explained by medical issues. *Id.* at 293-94. The supreme court stated that the case was a "rare exception[]" and that it turned on "unique facts and circumstances." *Id.* at 294. In this case, however, Yackel did not introduce any evidence to explain her behavior, and the state's evidence does not indicate that her bloodshot and watery eyes, slurred speech, and unsteadiness might be attributable to a cause other than drunkenness. Thus, Yackel's reliance on *Elmourabit* is unpersuasive.

In sum, the evidence is sufficient to support Yackel's conviction of DWI.

**B.     Obstructing Legal Process**

Yackel also argues that the state's evidence is insufficient to support her conviction of obstructing legal process because she did not engage in the type of conduct that the law deems to be obstruction.

A person is guilty of obstructing legal process if he or she intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subd. 1(2). The language of the statute "is directed solely at physical acts" and "forbids intentional physical obstruction or interference with a police officer in the performance of his official duties." *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn. 1988). Nonetheless, "[t]he statute may be used to punish 'fighting words' or any other words that by themselves have the effect of physically obstructing or interfering with a police officer in the performance of his duties." *Id.* "However, the statute does not apply to ordinary verbal criticism directed at a police officer even while the officer

9

is performing his official duties and does not apply to the mere act of interrupting an officer, even intentionally." *Id.* at 878.

In closing arguments, the prosecutor argued to the jury that Yackel obstructed legal process by being argumentative with Officer Langreck and interrupting him while he was talking to her, by exiting her car and not complying with Officer Langreck's orders to get back in the car, and by emptying the contents of her purse onto the ground. The prosecutor's argument makes clear that the state's case does not depend on any evidence of physical contact with Officer Langreck. Rather, the state relies on Yackel's verbal conduct and her non-verbal act of emptying her purse onto the ground. The question on appeal is whether that conduct had "the effect of physically obstructing or interfering with [Officer Langreck] in the performance of his official duties," or, on the other hand, was mere "ordinary verbal criticism directed at a police officer" or "the mere act of interrupting an officer." *Id.* at 877-78.

The evidence on which the state relies does not reflect conduct that is within the scope of the statute. Yackel's argumentative verbal conduct may have delayed Officer Langreck's investigation slightly, but not in a way that amounts to physical obstruction or interference. *See State v. Tomlin*, 622 N.W.2d 546, 549 (Minn. 2001) (holding that appellant did not obstruct legal process by telling lies to investigating officers, which lengthened and diverted investigation). Yackel's verbal conduct is more similar to "ordinary verbal criticism" than physical obstruction or interference. *See Krawsky*, 426 N.W.2d at 878. The same is true of Yackel's exiting her vehicle and remaining outside the vehicle despite Officer Langreck's orders. Yackel did not have physical contact with

Officer Langreck.  Her noncompliance with his orders caused a brief interruption, which the officer resolved by handcuffing Yackel and placing her on the ground without any physical resistance.  Furthermore, Yackel's emptying the contents of her purse on the ground does not violate the statute.  That action caused a slight delay but did not have "the effect of physically obstructing or interfering with [Officer Langreck] in the performance of his official duties." *Krawsky*, 426 N.W.2d at 877.  That she continued to search through the contents indicates that she may have been attempting to comply with Officer Langreck's request for her driver's license.

We are aware of only one case in which a defendant's verbal conduct was deemed to be sufficient to constitute obstructing legal process.  In *State v. Occhino*, 572 N.W.2d 316 (Minn. App. 1997), *review denied* (Minn. Jan. 28, 1998), this court affirmed the conviction of a man who interrupted a police officer while she was working at her desk at the police station.  *Id.* at 320-21.  The officer explained several times that she could not help Occhino with his closed case, but he became agitated and angry and continued speaking to her in a loud voice.  *Id.* at 318.  Importantly, Occhino's verbal conduct prevented the officer from answering telephone calls from citizens calling 911 and from other police officers and also prevented her from responding to a computer-aided dispatch from an emergency vehicle.  *Id.*  This evidence allowed the court to conclude that Occhino's verbal conduct "had the effect of physically interfering with [the officer's] performance of her official duties."  *Id.* at 321.  In addition, Occhino started a physical scuffle and resisted the officer's efforts to restrain him, which caused her physical injuries and required the intervention of two other officers.  *Id.* at 318, 321.

11

*Occhino* is distinguishable from the present case. Yackel's verbal conduct did not prevent Officer Langreck from completing any of the tasks that were part of his assigned duties. After only a slight delay, Officer Langreck handcuffed Yackel and arrested her without any physical resistance. Unlike the scenario described in *Krawsky* and the facts of *Occhino*, Yackel's verbal conduct did not "have the effect of physically obstructing or interfering with a police officer in the performance of his official duties." *Krawsky*, 426 N.W.2d at 877. Rather, Yackel's verbal conduct is more in the nature of "ordinary verbal criticism" or "the mere act of interrupting an officer," which does not violate the statute. *See id.* at 878. Furthermore, Yackel's verbal conduct was less disruptive than the verbal conduct in *Tomlin*, in which the supreme court held that no crime was committed even though the appellant misled investigating officers by telling lies, which delayed their investigation. *See* 622 N.W.2d at 548-49.

In sum, the evidence is insufficient to support Yackel's conviction of obstructing legal process.

**Affirmed in part and reversed in part.**