*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0683**

State of Minnesota,
Respondent,

vs.

Justin Patrick Allen Weston,
Appellant.

**Filed February 5, 2024
Affirmed
Worke, Judge**

Brown County District Court
File No. 08-CR-22-279

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Charles W. Hanson, Brown County Attorney, Paul J. Gunderson, Assistant County Attorney, New Ulm, Minnesota (for respondent)

Christopher M. Kennedy, Kennedy & Kennedy, Mankato, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**WORKE**, Judge

In this appeal from final judgment, appellant argues that his convictions for obstructing legal process must be reversed because his actions were legally insufficient to

constitute a violation of the statute, and the charges for obstruction violate his First Amendment rights. We affirm.

## FACTS

In April 2022, two police officers and a sheriff's deputy attempted to serve an arrest warrant on A.P. at her residence.[1] One of the officers entered the garage-like space through a service door and knocked on the front door. A.P. answered and agreed to speak to the officer once she woke her mother to babysit her niece. A.P. then went back inside the residence.

As law enforcement waited for A.P. to return, a person, later identified as appellant Justin Patrick Allen Weston, drove up and stated that he was the homeowner. Weston asked why law enforcement was at his home, and one of the officers replied that they were serving an arrest warrant on A.P. Law enforcement attempted to speak to Weston, but Weston said he did not need to answer any questions. As he spoke with law enforcement, Weston moved through the garage and stood between them and A.P., who was standing in the doorway of the residence. Weston's demeanor was initially calm, but he "escalated," "became upset," and "started becoming argumentative."

Weston briefly went inside the residence and then came back out. Weston told law enforcement that they could not take A.P. and that he would bring A.P. to jail. One of the

---

[1] The following facts are derived from the evidence and testimony presented at trial and framed in the light most favorable to the verdict. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) ("When evaluating the sufficiency of the evidence, . . . [t]he evidence must be viewed in the light most favorable to the verdict, and it must be assumed that the [jury] disbelieved any evidence that conflicted with the verdict." (quotation and citation omitted)).

officers replied to Weston by stating that this is "not the way it worked." The officer explained the nature of the allegations and the bail amount to A.P. and Weston. Weston increased the volume of his voice and became even more argumentative with law enforcement.

Weston then walked back outside from the doorway and proceeded out of the service door towards where one of the officers was standing. Weston then became upset and accused one of the officers of breaking his security door. Weston was less than two feet from one of the officers when Weston took a step towards the officer. The officer extended his arm and made contact with Weston. Weston yelled that he was assaulted by the officer. The officer then told Weston to "back up" and "to listen to [him]," but Weston continued shouting.

The officer warned Weston "two, three times that he was going to be placed under arrest for obstruction if he didn't stop." Weston responded by putting his fists up and telling the officer something like: "Arrest me; then I'll sue your a** in court." Weston and A.P. were both placed under arrest. In a search subject to his arrest, law enforcement found two 1000 mg vials of THC oil on Weston's person.

The state charged Weston with fifth-degree possession of controlled substance in violation of Minn. Stat. § 152.025, subd. 2(1) (2020), and obstructing legal process, interference with a peace officer in violation of Minn. Stat. § 609.50, subd. 1(2) (2020).

Weston moved to dismiss the charges, arguing that the charge of obstructing legal process violated his rights to free speech and lacked probable cause because there was not sufficient evidence to show that his actions constituted a physical obstruction. Following

an omnibus hearing, the district court denied Weston's motion. The state amended the complaint to include an additional count of obstructing legal process. Weston filed a second motion to dismiss the added charge. The district court denied this motion as well.

A jury trial was held. The jury found Weston guilty as charged. Prior to sentencing, the state dismissed the drug-possession charge, and the district court sentenced Weston on one of the counts of obstructing legal process to 90 days in jail, staying 87 days for six months. This appeal followed.

## DECISION

Weston argues that the district court should have dismissed the charges of obstructing legal process for lack of probable cause because the actions of Weston did not physically interfere with law enforcement in the execution of the warrant and the charges violate his First Amendment rights. The essence of Weston's challenge to his convictions is that there was insufficient evidence to support his convictions of obstructing legal process.[2]

When direct evidence supports an element of an offense, as it does here, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to

---

[2] We construe Weston's argument to be a challenge to the district court's order denying his motion to dismiss for lack of probable cause. Following a conviction, this is treated as a sufficiency challenge. *State v. Holmberg*, 527 N.W.2d 100, 103 (Minn. App. 1995) (construing a challenge to denial of dismissal for lack of probable cause following conviction as a sufficiency-of-the-evidence challenge), *rev. denied* (Minn. Mar. 21, 1995). As a result, we analyze the argument under a sufficiency-of-the-evidence framework.

reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted). In doing so, we assume that the jury believed the state's witnesses. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). If the jury could have reasonably found the defendant guilty, giving due regard to the presumption of innocence and the burden of proof beyond a reasonable doubt, we will not overturn a jury verdict. *Griffin*, 887 N.W.2d at 263.

To obtain a conviction for obstructing legal process, the state must prove that Weston intentionally "obstruct[ed], resist[ed], or interfere[d] with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subd. 1(2). Because the statute implicates the freedom of speech, it must be construed narrowly and the language of the statute "is directed solely at physical acts" and "forbids intentional physical obstruction or interference with a police officer in the performance of his official duties." *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn. 1988) (concluding that a previous version of statute prohibited conduct that included fighting words, which could have the effect of physically obstructing or interfering with a police officer's performance of their duties). Physically obstructing or interfering is conduct that "involves . . . substantially frustrating or hindering the officer in the performance of his duties." *Id.* But a "wide variety of circumstances" and conduct could legitimately fall under section 609.50. *Id*. at 878.

"The statute may be used to punish 'fighting words' or any other words that by themselves have the effect of physically obstructing or interfering with a police officer in the performance of his duties." *Id.* at 877; *see State v. Tomlin*, 622 N.W.2d 546, 549 (Minn.

5

2001) (applying *Krawsky* and concluding that defendant's lies to police did not rise to the level of fighting words and did not constitute obstructing legal process because defendant's lies and omissions did not physically obstruct officers during their investigation). "However, the statute does not apply to ordinary verbal criticism directed at a police officer even while the officer is performing his official duties and does not apply to the mere act of interrupting an officer, even intentionally." *Krawsky*, 426 N.W.2d at 878.

Weston makes two arguments. First, he argues that the evidence is insufficient to support that he "physically obstruct[ed] or interfere[ed]" with the police officers' performance of their duties. Second, he argues that his words did not constitute "fighting words." We address each argument in turn.

### Physical interference

First, Weston argues that the evidence is insufficient to support that his single step towards one of the officers substantially frustrated or hindered law enforcement's arrest of A.P. We disagree.

When viewing the evidence in the light most favorable to the verdict, the record contains significant evidence that Weston physically interfered with law enforcement's ability to arrest A.P. *See Griffin*, 887 N.W.2d at 263; *Krawsky*, 426 N.W.2d at 877-78. At the jury trial, one of the officers testified that "[Weston] walked towards [him], and [the officer] put [his] hand out, because [Weston] would have run into [him] if [he] hadn't." Weston also argued with law enforcement, stood in the doorway between law enforcement and A.P., put his fists up and told law enforcement to arrest him, and took an aggressive step towards one of the officers. This testimony is supported by the body-camera footage.

6

Weston also argues that the single step he took was insufficient to prevent law enforcement from performing their duties and arresting A.P. Again, we disagree. First, as the state points out, Weston focuses only on his conduct immediately preceding the arrest—his single step forward—rather than the totality of his actions leading up to the arrest. The record supports that Weston did more than take one aggressive step towards one of the officers; rather, Weston yelled at and argued with law enforcement, refused to comply with law enforcement's requests, stood in the doorway between law enforcement and A.P., put his fists up, and told officers to arrest him. Moreover, Weston has not shown that a single step cannot, as a matter of law, be sufficient to qualify as obstruction. *See, e.g., State v. Hager*, 727 N.W.2d 668, 676 (Minn. App. 2007) (noting that "Minnesota caselaw requires that the words or acts of the accused have the effect of a physical obstruction").

In sum, the evidence is sufficient to support that Weston physically interfered with law enforcement's arrest of A.P.

### *Fighting words*

Second, Weston argues that his words were ordinary verbal criticism and merely interrupted law enforcement because they did not substantially frustrate or hinder the officer in the performance of his duties.[3] *See Krawsky*, 426 N.W.2d 875, 877 (providing

---

[3] Weston frames this as a constitutional challenge, arguing that Minn. Stat. § 609.50, subd. 1(2), is unconstitutional because it violates his right to free speech. He requests this court interpret the statute de novo. *See State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017). However, a similar argument was considered and rejected by the supreme court in *Krawsky*. The issue in *Krawsky* was whether Minn. Stat. § 609.50 (1986), which makes it a misdemeanor to intentionally interfere with a peace officer while the officer is engaged

7

that that physical obstruction or interference "involves . . . substantially frustrating or hindering the officer in the performance of his duties"). He contends that his conduct is distinguishable from the conduct in *State v. Occhino*. *See* 572 N.W.2d 316 (Minn. App. 1997), *rev. denied* (Jan. 28, 1998). There, this court affirmed the conviction of a defendant who interrupted a police officer while she was working at her desk at the police station. *Id.* at 320-21. The officer explained several times that she could not help the defendant with his closed case, but he became agitated and angry and continued speaking to her in a loud voice. *Id.* at 320. The defendant paced back and forth and expressly refused commands to leave. *Id.* at 318. The defendant physically resisted an officer's attempt to restrain and escort him from the area which started a physical altercation, which in turn caused the officer's physical injuries and required the intervention of two other officers. *Id.* at 318, 321. The defendant's verbal conduct prevented the officer from answering telephone calls from citizens calling 911 and from other police officers and also prevented her from responding to a computer-aided dispatch from an emergency vehicle. *Id.* This court determined that the jury could reasonably have concluded that the defendant's "intentional" and "repeated" oral interruptions exceeded mere criticism of the officer and rose to an

---

in the performance of his official duties, is unconstitutionally overbroad or vague on its face. The supreme court held that the statute was directed solely at a particular kind of physical act or words that physically obstruct or interfere with an officer, and thus, it was not vague or overbroad. As a result, the court in *Krawksy* implicitly determined that the provision was not unconstitutionally vague or overbroad. *See State v. Yeazizw*, A03-75, 2004 WL 556738, at *3-4 (Minn. App. Mar. 23, 2004); *see also* Minn. R. Civ. App. P. 136.01(c) (providing that nonprecedential opinions may be cited as persuasive authority). Though the statute was worded differently at the time *Krawsky* was decided, the specific provision at issue in *Krawksy* is the same provision that has now been incorporated into subdivision 1(2). *See Yeazizw*, at *3-4.

unlawful level such that "his words had the effect of physically interfering" with the performance of the officer's official duties. *Id*. at 320-21. This evidence allowed the court to conclude that the defendant's verbal conduct "had the effect of physically interfering with [the officer's] performance of her official duties." *Id*. at 321. The court additionally determined that the defendant's physical action also constituted obstruction.

The state responds that Weston's words and actions are similar to those in *Occhino*. We agree.

The record shows that Weston yelled at law enforcement, swore, refused to follow orders, accused law enforcement of breaking the service door and assaulting him, told law enforcement that they could not take A.P. and that he would bring A.P. to jail, ordered law enforcement to leave and to get off his property, and interrupted one of the officers as he attempted to speak to him. These words, like those in *Occhino*, rose to a level beyond mere criticism because they obstructed and interfered with what was proceeding as a calm arrest of A.P. *See Krawsky*, 426 N.W.2d at 877 ("[T]he statute may be used to punish a person who runs beside an officer pursuing a felon in a public street shouting and cursing at the officer if the shouting and cursing physically obstructs the officer's pursuit and if the person intends by his conduct to obstruct or interfere with the officer."). Thus, Weston's words constituted fighting words. [4]

---

[4] Weston also argues that because it was still physically possible to arrest A.P., and he did not threaten law enforcement, he did not interfere with law enforcement physically. But that is not the standard outlined in *Krawsky*. *See Krawsky*, 426 N.W.2d 875, 877 (describing physically obstructing or interfering as conduct that "involves . . . substantially frustrating or hindering the officer in the performance of his duties").

In sum, because Weston's words constitute fighting words, his argument that his conduct was protected by the First Amendment fails.

**Affirmed**.